## GERTRUDE K. HUHN AND ANOTHER v. ANNA C. RYAN AND OTHERS.[1]

June 28, 1940.

No. 32,404.

*George G. Chapin* and *Walter L. Chapin,* for appellants.

*O. O. Myhre,* for respondent Prudential Insurance Company of America.

*Kennedy & Kennedy,* for respondents Lloyd, James P., and Elizabeth Rohan.

HOLT, JUSTICE.

Action for declaratory judgment. Trial to the court. Plaintiffs' motion for amended conclusions of law or a new trial was denied, and they appeal.

The facts may be summarized thus: In the fall of 1903 Philip C. Justus was the owner of two lots in the city of St. Paul fronting north on Dayton avenue. The rear of the lots abutted lots owned by Carl P. Waldon fronting south on Selby avenue. Justus's lots were numbered 7 and 8. Both owners, then about to erect apartments upon their proper-

[1]Reported in 293 N. W. 138.

ty, agreed to join in installing a heating plant for the buildings and in employing an engineer or janitor to run the heating plant and do the janitor work in the apartments. It appears that Waldon was to erect but one building on his land, and Justus one upon each of his two lots. On October 15, 1903, Justus and Waldon, their wives joining, executed and acknowledged a written contract in respect to the heating plant, fuel, janitor, and a 12-foot right of way between their lots. It is not necessary to set out this lengthy document. It was duly recorded in the register of deeds' office of Ramsey county December 2, 1903; thereby the parties covenanted that the agreement was to bind their heirs and assigns and to run with the tracts of land described, and that no change of ownership of said tracts "of land or any part thereof shall effect [sic], any obligation to pay the proportionate part of any expense incurred hereunder." The three apartment buildings were substantially the same size; and Justus agreed to pay two-thirds of the cost of the heating plant, and its maintenance, and two-thirds of the fuel bill, and two-thirds of the janitor's wages; and Waldon agreed to pay one-third of those items. No controversy has ever arisen over those matters. The agreement also provided that Waldon should furnish space in his apartment for the heating plant and fuel bins without expense to Justus, and then there is this provision that gives rise to this lawsuit:

"It is further mutually agreed between the parties hereto that said Philip C. Justus shall and will provide in the basement of one of the buildings located on the property first above described suitable quarters for janitor or engineer for his family, and that no charge shall be made by said Philip C. Justus against said Carl P. Waldon on account of so furnishing said quarters for said janitor and his family, * * *"

Justus did fit up quarters in the basement of the apartment erected on lot 7 for the residence of the janitor, which quarters every janitor since employed has occupied. In

March, 1905, Justus conveyed both lots to one Luethold. In December, 1918, Luethold conveyed lot 7 to one Murray, through whom plaintiff Gertrude K. Huhn derives title. In March, 1919, Luethold conveyed lot 8 to one Maron, through whom defendant William Lloyd Rohan derives title. Plaintiff Gertrude K. Huhn claims the right to compel defendant William Lloyd Rohan to pay her one-half of the value of the use of the janitor's quarters.

The conclusion of law challenged by the appeal, in substance, is this: That Justus independently of the agreement with Waldon created an easement and servitude upon lot 7 in favor of lot 8, and that the burden of such easement and servitude so placed on lot 7 passed to the grantees of lot 7 and the benefits of such easement and servitude passed to the grantees of lot 8. The agreement between Justus and Waldon controls the rights as between the owners of lots 7 and 8 and the owners of the Waldon contiguous property. But, while the written contract is to be taken into consideration, there is nothing therein which purports to create any easement or servitude as between lots 7 and 8. However, Justus, who had agreed to provide janitor's quarters in one of his two apartments, did construct such quarters in the basement of the building on lot 7. Everyone who dealt with either the former Justus properties, or the adjoining Waldon apartment, knew that janitor's quarters free of charge as against Waldon apartment owners were maintained on lot 7; and owners of the apartment on lot 7 and that on lot 8 knew that the owners of the Waldon's apartment must furnish free of charge room for the heating plant and fuel bins. The contract was of record, and subsequent conveyances of title to any of the three apartments indicated the existence of these two easements or servitudes. When Justus conveyed both lots 7 and 8 to Luethold in 1905 the latter made no change in respect to janitor's quarters. When in 1918 Luethold sold and conveyed lot 7 to Murray, the latter knew that the janitor's quarters therein were a burden or

charge upon that lot. It seems to us that the parties in fixing the purchase price for lot 7 must have taken this burden or charge upon it into consideration. Luethold did not sell lot 8 until 1919. And from that time until May, 1936, when lot 7 was purchased by Nora Aschkar, no question was ever raised as to any compensation from the owner of lot 8 for the value of the use of the janitor's quarters on lot 7.

As to joint obligation of the owners of lots 7 and 8 to pay two-thirds of the maintenance of the heating plant, the fuel bill, and janitor's wages, there can be no doubt that if the owner of the one of these two lots was compelled to pay the whole thereof he could have contribution enforced as against the owner of the other lot. But these agreements for janitor's living quarters and for room for the heating plant and fuel bins are in the nature of easements or charges of servitude imposed on the one property for the benefit of the other, which as pertaining to the Justus lots he located and fixed upon lot 7. It remained imposed upon lot 7, when the owner of both lots severed ownership by conveying lot 7 to Murray. The law in respect to easements as it relates to the purchase of lot 7 by Murray is thus stated in 17 Am. Jur., Easements, § 128:

"A person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement."

Here there was actual and constructive notice that lot 7 was burdened with this charge for the benefit of the Waldon property—as to it the janitor's quarters must be furnished without compensation. It is not easy to find any theory under which any liability could be fastened upon the owner of lot 8 for the value of the use of the janitor's quarters. We quote this from Lampman v. Milks, 21 N. Y. 505, 507:

"The principle is, that where the owner of two tenements sells one of them, or the owner of an entire estate sells a

portion, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains."

That is in this case for lot 7 to continue the living quarters for the janitor without charge as against lot 8.

The industry of counsel has failed to discover any adjudication upon facts like those here involved. We are of the opinion that the conclusions of law of the learned trial court were right.

The order is affirmed.