WILLIAM QUIST v. RICHARD FULLER.
GERALD D. BEHRENDT AND ANOTHER,
INTERVENORS.

220 N. W. 2d 296.

July 5, 1974—No. 44268.

*Babcock, Locher, Neilson & Mannella, Richard Beens,* and *John M. Burke,* for appellant.

*Byron W. McCullagh,* for respondents Behrendt.

*John D. Flanery,* for respondent Quist.

Heard before Kelly, Scott, and McRae, JJ., and considered and decided by the court.

SCOTT, JUSTICE.

This action was commenced in the District Court of Hennepin County, the complaint alleging tortious interference with a contract for the sale of land in Anoka County described as the West one acre of Lot 7, Auditor's Subdivision No. 84 (hereinafter Lot 7). Venue was subsequently transferred to the Anoka County District Court, and the complaint amended to claim a prescriptive easement over a closely situated lot described as Lot 5, Auditor's Subdivision No. 84 (hereinafter Lot 5), owned by the defendant Fuller. The trial court, finding that there was an open, continuous, visible, and unmolested use of Lot 5 as a "public road" for more than 15 years before defendant acquired any interest in the property, ordered that judgment be entered in favor of plaintiffs. Affirmed.

Entry 31 of the abstract of title to Lot 7 listed Albert Dawson as the owner of the entire Southeast Quarter of the Northwest Quarter of Section 20, Township 31, Range 23, consisting of 40 acres. In 1933, the state acquired a highway easement, known as Highway No. 65, from Dawson over the eastern 50 feet of the

entire 40 acres, and on July 3, 1940, Lot 7 was sold to George Torrey, plaintiff's predecessor in title, on a contract for deed. At approximately the same time, Dawson sold Lot 9 to Magner Berthelsen, together with an easement for road purposes over the west 1 rod of Lots 6 and 7 and over the north 1 rod of the south 41 rods of the entire 40 acres which is now known as Lot 5. The road which is the subject of this dispute is constructed on Lot 5.

On September 9, 1941, the plat of Auditor's Subdivision No. 84 was filed with the Anoka County Register of Deeds. It consisted of 9 lots owned by several parties. *Lot 5, one rod wide*, commenced at Highway No. 65 and ran westerly for a distance of 1,320 feet. Lot 4, north of and parallel to Lot 5, was owned by John A. Klugness. Lot 6, lying parallel to and south of Lot 5, was owned by Albert Dawson with the contract for deed to Henry J. Berthelson. No other lot in Auditor's Subdivision No. 84 abutted Lot 5. Further, the plat of Auditor's Subdivision No. 84 contained no dedication of lots or property for public roadways.

Fee title to Lot 5 remained in Albert Dawson through 1960, although the county real estate tax records disclose that as early as 1942 Lot 5 was removed from the tax rolls until 1959. Albert Dawson died September 17, 1944. Plaintiffs believe that it is fair to assume that the village obtained an easement or some document prior to his death to justify this removal from the tax rolls, though none is available.

On October 27, 1948, George Torrey contracted to sell the east 4 acres of Lot 7 without any reservation of an easement for access to the west 1 acre. Plaintiffs again assume that Torrey relied upon the creation of a public road which provided access to the west 1 acre and which would have removed the necessity of creating an easement for his own use.

Lot 5 was reinstated on the tax rolls in 1960, and property taxes have been levied from that time until the present. Sewer assessments have been levied in the amount of $314.40 against Lot 5 by the city of Blaine. Defendant paid the real estate taxes levied in 1960 which were delinquent, and received a state as-

signment certificate covering Lot 5 in 1963 and obtained clear title after the expiration of the redemption period. It is contended by plaintiffs that defendant did not give proper notice of this transaction to the adjoining landowners.

Although defendant claims that no evidence relative to the use of Lot 5 from 1941 to 1949 was introduced, Mrs. Edna Bremer, city assessor for Blaine since 1945, testified that she had traveled the road as early as 1945. Mr. Jack Pauls, chief deputy auditor for Anoka County, testified that no real estate taxes were levied against Lot 5 between 1942 and 1959 because it was designated as a "road" during those years and was considered exempt from taxes.

There is some evidence that the road in dispute was not located on Lot 5, but on Lot 6. Defendant testified that he had had his Lot 6 surveyed in 1957, and that, by using the surveyor's stakes for alignment, he had constructed a fence along the north line of Lot 6. Fuller then noticed that the road lay at least partially upon Lot 6. Although one witness for plaintiffs, E. L. Young, claimed that the road always lay to the north of the boundary to Lot 6, he was not certain as to the precise location of the boundary between Lots 5 and 6. After Fuller constructed this fence in 1958, Young was forced to use a route outside Auditor's Subdivision No. 84 to reach the west 1 acre of Lot 7. A careful review of the various aerial photographs taken of Auditor's Subdivision No. 84 indicates the possible confusion over the location of the road in relation to Lots 5 and 6.

Although there is evidence that hunters and farmers used the road to travel across Auditor's Subdivision No. 84, the evidence indicates that most users were either the plaintiffs, businessmen, or friends of defendant. Defendant contends that the use was either permissive or in exchange for the plaintiffs' agreement to aid in the maintenance of Lot 5. Together, Quist and Fuller graded and leveled the road on Lot 5 in 1962 and in 1965, and witnesses corroborated this. There is substantial testimony that the city of Blaine at least occasionally plowed the road, while

some witnesses claimed that this was a regular procedure. The witnesses for defendant stated that the trail was rarely plowed. In addition, James Nash, Blaine city clerk, testified that after a search of the records, he was unable to find an authorization by the city for either maintenance or snowplowing of the road.

The fencing of Lot 6 in 1958 along lines established by surveyors was claimed by plaintiffs to be an unlawful interference with their right to make use of the roadway. However, it was not until 1970, when defendant again established a blockade over the road, that this present action was commenced. The Behrendts, purchasers under a contract for deed of a portion of Lot 7 from plaintiff Quist, intervened as parties plaintiff.

Pursuant to the lower court's finding that there was a statutory user for the 15-year period, the defendant was enjoined from any interference with the existence of Lot 5 as a "public road."

Minn. St. 160.05, subd. 1, which deals with the dedication of roads to the public use provides in part:

"When any road or portion thereof shall have been used and kept in repair and worked for at least six years continuously as a public highway, the same shall be deemed dedicated to the public to the width of two rods on each side of the center line thereof and be and remain, until lawfully vacated, a public highway whether the same has ever been established as a public highway or not; * * *."

Further, this court has set forth the elements necessary to establish a prescriptive easement in Romans v. Nadler, 217 Minn. 174, 177, 14 N. W. 2d 482, 485 (1944):

"* * * We construe the word *prescription* * * * to mean *adverse possession.*

"* * * There are five essentials of adverse possession. It must be hostile and under a claim of right, actual, open, continuous, and exclusive."

See, also, Iverson v. Fjoslien, 298 Minn. 168, 213 N. W. 2d 627 (1973).

It is clear to this court that several conclusions are necessitated. The standard recognized in Levine v. Twin City Red Barn No. 2, Inc. 296 Minn. 260, 264, 207 N. W. 2d 739, 742 (1973), is clearly applicable:

"* * * It is axiomatic that where a burden has been imposed upon land sold, assuming the marks of the burden are known to the purchaser or are open and visible and apparent on ordinary inspection of the premises, the purchaser takes the title with the servitude upon it. Taylor Investment Co. v. Kansas City Power & Light Co. 182 Kan. 511, 322 P. 2d 817 (1958); McKeon v. Brammer, 238 Iowa 1113, 29 N. W. 2d 518 (1947). It has long been recognized in Minnesota that a person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement. Werner v. Sample, 259 Minn. 273, 107 N. W. 2d 43 (1961); Huhn v. Ryan, 208 Minn. 128, 293 N. W. 138 (1940)."

Defendant was the owner of Lot 6 for a substantial period of time prior to his acquisition of Lot 5 under the state assignment certificate. It is undoubtedly true, according to the evidence, that he was aware of the use of Lot 5 as a means of both egress and ingress by plaintiffs. Therefore, it is clear that this purchase of Lot 5 was subject to any rights acquired prior to that time by plaintiffs or the general public. The issue before us then necessitates a determination as to what particular rights had been established to Lot 5 prior to its acquisition by defendant.

The conclusion of the lower court, that there was an open, continuous, visible, and unmolested use of Lot 5 as a "public road" for more than 15 years before the defendant acquired interest in the property, is amply supported by the evidence. Testimony indicated the need for access to the road on Lot 5 as a means to reach Lot 7, owned by plaintiffs, that the road was continuously used, that the municipality aided in the road's maintenance at least occasionally, and perhaps regularly, and that Lot 5 had been removed from the tax rolls for a period of approximately 17 years.

Defendant contends that the barricades over the road in 1958 and again in 1970 prevented the satisfaction of the element of continuous use. However, the finding that the use was continuous refutes this contention. Either the blockage of the road in 1958 was in reality an impediment over Lot 6, owned by the defendant, or, in the alternative, was unjustified if over Lot 5, for the defendant had acquired no rights in that lot until his purchase of the state assignment certificate. Although the record is not clear as to which of these two theories was utilized by the lower court, either is supported by the evidence and justifies a holding that the interference in 1958 did not interrupt the continuous use of the road.

Defendant then contends that the use of the road in question was permissive and that, therefore, an easement cannot exist. This court has stated that where one claiming an easement has established open, continuous, and unmolested use, there is a presumption that the use was adverse, thereby placing upon the owner of the servient estate the burden of rebutting the presumption by showing that the use was permissive. Hartman v. Blanding's Inc. 288 Minn. 415, 181 N. W. 2d 466 (1970) ; Alstad v. Boyer, 228 Minn. 307, 37 N. W. 2d 372 (1949). Defendant failed to rebut this presumption.

It is clear that the lower court found that Lot 5 was dedicated to the public use as a public road and that the requirements of an easement by prescription had been met. A dedication to the public use may be implied from the circumstances of the individual case, but intent to dedicate must be shown. Jungels v. Schramel, 158 Minn. 93, 197 N. W. 99 (1924) ; Daugherty v. Sowers, 243 Minn. 572, 68 N. W. 2d 866 (1955). The intent to dedicate is clearly implied by a search of the facts presented here.

Defendant contends that uses made of the road were not public in nature. However, this court has found that it is "the right of travel by all the world, and not the exercise of the right, which constitutes a road a public highway." Anderson v. Birkeland,

229 Minn. 77, 82, 38 N. W. 2d 215, 219 (1949); Trebnick v. Gordon, 259 Minn. 164, 106 N. W. 2d 622 (1960).

Defendant then asserts that even if the elements of Minn. St. 160.05, subd. 1, regarding dedication to the public use, are satisfied, the city of Blaine has performed affirmative and unequivocal acts to demonstrate its intent to abandon Lot 5 as a public road. Defendant cites as a most significant act the city's reinstating of Lot 5 on the tax rolls in 1960. See, Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. 2d 588 (1948).

Although it is well settled that a public road may be abandoned by public authority, see State, by Burnquist, v. Marcks, 228 Minn. 129, 36 N. W. 2d 594 (1949), and In re Application of Rein to Register Title, 275 Minn. 79, 145 N. W. 2d 537 (1966), the mandate of Minn. St. 541.01 must also be considered. This statute provides that an occupant of a public way or other ground dedicated or appropriated to public use does not acquire by reason of his occupancy of the property any title thereto. In view of § 541.01, our ruling in Neill v. Hake, 254 Minn. 110, 121, 93 N. W. 2d 821, 829 (1958), that the public's right may not be divested without public consent or operation of law, and our holding in Alvin v. Johnson, 241 Minn. 257, 63 N. W. 2d 22 (1954), that a tax title conveyance does not terminate an unrecorded easement for a roadway across the property conveyed, the lower court properly considered and dismissed the applicability of the theory of abandonment.

Therefore, in light of the continued use of the road as a public road and the satisfaction of the required elements of time and use, we must hold that there is adequate evidence to support the findings of the lower court, despite the reinstatement of the lot in question upon the tax rolls. We affirm the lower court's decision to enjoin further interference by defendant.

Affirmed.