## R. S. RICE v. JON L. MILLER AND OTHERS.

238 N. W. 2d 609.

January 9, 1976—No. 45593.

*Jerome S. Rice,* for appellant.
*Curtis L. Charlson,* for respondents.

PER CURIAM.

Plaintiff appeals from the order staying entry of judgment and judgment entered in an action for certain injunctive and

declaratory relief. The sole question raised on appeal is whether the district court erred in its conclusion that the public had not acquired a prescriptive easement across defendants' property.

Springsteel Island is located in Lake of the Woods in Roseau County. It was owned until May 1946 by the Springsteel family when it was sold to Gustaf Anderson. Anderson sold the island to the Springsteel Resort Corporation on August 27, 1952. As part of its development efforts, the corporation during 1952 and 1953 constructed a road from the mainland to the island, now County State Aid Highway No. 13, platted the island, and improved an existing road which afforded access from the island's interior to a sandy peninsula. After these improvements, the peninsula and access road began to experience extensive seasonal use by the interior island lot owners and the general public. Lot 4, section 8, which included the peninsula and access road, was not platted until purchased by defendant Jon Miller in 1973.

During 1958, Leroy Swanson obtained property on Springsteel Island, including Lot 4, section 8. Beginning in 1960, and for several years thereafter, Swanson blocked the access road each spring with large rocks, logs, or dirt piles. One year he put up signs. One winter he charged fishermen $1 per car to use the access road. These efforts, while successful in stopping vehicular traffic, did not entirely stop pedestrians from going to the peninsula, as they would walk over or around the obstructions or take different paths. Swanson sold Lot 4, section 8, to defendant Jon Miller without reservation of the access road in the spring of 1973.

In Burns v. Plachecki, 301 Minn. 445, 223 N. W. 2d 133 (1974), we again held that the rules of adverse user that apply in cases of adverse possession also apply in cases of prescriptive easements. Romans v. Nadler, 217 Minn. 174, 14 N. W. 2d 482 (1944). The requirements of a use giving rise to a prescriptive easement are that it be hostile or adverse, under a claim of right, open, continuous, and exclusive. The statutory prescriptive period is 15 years. Burns v. Plachecki, *supra*; Minn. St. 541.02.

Adverseness will be presumed if the other elements are shown. However, where the presumption is unavailable, adverseness is a question of fact with the burden to prove the allegation by a preponderance of evidence on the party claiming the easement. Alstad v. Boyer, 228 Minn. 307, 37 N. W. 2d 372 (1949).

An adverse possession must be continuous within the nature and character of the right claimed because "upon any cessation or interruption, the possession, in contemplation of law, is again in the holder of the legal title." Romans v. Nadler, 217 Minn. 174, 178, 14 N. W. 2d 482, 485. In Hartman v. Blanding's Inc. 288 Minn. 415, 421, 181 N. W. 2d 466, 469 (1970), we stated:

"* * * The very foundation of the establishment of a right to an easement by prescription is the acquiescence by the owner of the servient tenement in the acts relied upon to establish such prescriptive right."

We defined acquiescence as follows (288 Minn. 422, 181 N. W. 2d 470):

"* * * 'Acquiescence,' regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate *consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user.*" (Italics supplied.)

The record supports the court's finding that the access was used almost exclusively by the Springsteel family and subsequent owners until County State Aid Highway No. 13 was completed in 1952. Between 1952 and 1960, there was a period of continuous acquiescence in public use by the Springsteel Resort Corporation. However, beginning in 1960 or 1961, this acquiescence ended. The evidence is uncontradicted that for several months at a time during the succeeding 6 or 7 years, Leroy Swanson successfully prohibited vehicular traffic and impeded foot traffic to the extent that the public at times had to leave the surface of the road to get to the beach. He also posted prohibitive signs, and on one occasion charged a fee for use of the road.

Appellant argues that since these efforts on Swanson's part were not ultimately successful in that the public circumvented or removed the barriers, the prescriptive period was not interrupted. In support he cites Quist v. Fuller, 300 Minn. 365, 220 N. W. 2d 296 (1974). In Quist, a road ran across a certain Lot 5 providing a means of ingress and egress for Lot 7, which was owned by plaintiff since 1948. Defendant for a number of years owned Lot 6 which abutted the access way on Lot 5. In 1963, defendant acquired Lot 5. Defendant erected barricades across the access in 1958 and 1970. He contended that these prevented the satisfaction of continuous use. Although the trial court was not explicit in its reasons for finding continuous use, we cited two possible reasons for so holding. The evidence was unclear as to exactly where the blockade was erected in 1958. It may have been located entirely on Lot 6, thus not affecting the easement across Lot 5. In the alternative, if the blockade in 1958 were on Lot 5, it had no legal significance because defendant did not possess or claim any interest in the property at that time. In either event, the interference did not interrupt the continuous use of the road by the public during a 15-year period. The case before us is distinguishable in that Leroy Swanson was the owner of the servient land at the time he attempted to block the access.

Leroy Swanson sufficiently asserted his ownership and intention to prevent public usage of the access way. As his actions broke the continuity of the adverse use, the requisite period of 15 years was never completed.

Affirmed.