586 S.E.2d 149

**Harold PITTMAN, Respondent,**

v.

**C.E. LOWTHER, Appellant.**

**No. 3669.**

Court of Appeals of South Carolina.

Heard March 12, 2003.
Decided Aug. 4, 2003.
Rehearing Denied Sept. 17, 2003.

H. Fred Kuhn, Jr., of Beaufort, for Appellant.

Darrell T. Johnson, Jr., of Hardeeville, for Respondent.

STILWELL, J.:

C.E. Lowther appeals the order of the circuit court granting a private prescriptive easement across his land to Harold Pittman. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Weldon Wall purchased Good Hope Plantation from Good Hope Corporation. At that time, a very old system of trails and plantation roads traversed the entire tract. One such plantation road was Wellington Road, leading into the planta-

tion from U.S. Highway 278. The entire road system was shown on the plat referenced in the deed. In 1973, Wall subdivided Good Hope into two parcels: Parcel A consisting of 2,340.8 acres and Parcel B containing 661.33 acres. Wall sold Parcel A to Pittman. The plat referenced in this deed did not show Wellington Road or any of the other plantation roads.

Mary Wilcox later purchased Parcel B at a foreclosure sale. Wilcox assigned a portion of her bid on Parcel B to Pittman and in 1975 Pittman purchased 279 acres out of Parcel B. Pittman converted a hunting lodge located on the property into a home. This property was referred to in the testimony as the "house tract." On three sides, the "house tract" was bordered by the 2,340.8 acre parcel already owned by Pittman. The remaining portion of Parcel B, held by Wilcox, abutted the fourth side of the tract. The "house tract" did not abut any public road. Both Parcel A and Wilcox's land abutted U.S. Highway 278.

Since May of 1973, Pittman used Wellington Road to travel from Highway 278 to a trailer on Parcel A. At the time he purchased the "house tract" in 1975, his only access to that property was also Wellington Road.[1] After the 1975 purchase, Pittman continued to use Wellington Road to reach Parcel A and as a driveway to his home on the "house tract." A portion of the road passed over Wilcox's land before it joined U.S. Highway 278.

Wilcox sold her remaining portion of Parcel B consisting of 312.11 acres to Lowther in 1976. About five or six years later, Lowther began to place obstacles in Wellington Road in an effort to close the portion which traversed his property.[2] Pittman either drove around the obstacles or cut or pushed

---

1. The "house tract" deed granted Pittman an express 20–foot access easement to Highway 278. Pittman never used the easement for a driveway to his home. He testified that he had negotiated for the easement for the sole purpose of getting a mowing machine in behind a fence. Five or six big live oak trees stand in the path of the easement and would have to be felled to create a road.

2. Pittman testified that about four or five years after he bought the "house tract" he built a road from a trailer located on the adjoining Parcel A out to U.S. Highway 278. At some point thereafter he constructed a driveway connecting his home on the "house tract" to that road. This provided an alternate route at about the time the Lowthers began to obstruct Wellington Road.

them down to travel the road to Highway 278. This scenario was repeated numerous times.

Pittman stopped using the road for approximately four or five months in 1992 while a mutual friend attempted to mediate the dispute. After the friend told Pittman his settlement attempts were unsuccessful, Pittman promptly pushed up the wires and cables across the road and continued to travel across it to Highway 278. In the early fall of 1997, Lowther requested his attorney write to Mr. Pittman and instruct him to stay off his property and the disputed section of the road. Pittman ignored the letter and destroyed the barriers blocking the road. Lowther called a deputy sheriff out to observe the damage and instruct Pittman to stay off of his land. This litigation ensued.

The original Wellington Road and a separate, newer county road, some 200 feet farther up, run roughly parallel to one another leading off Highway 278 into the old Good Hope land and towards the Lowther and Pittman properties. About 300 feet from Highway 278, the new county road merges into the original Wellington Road and runs for some unknown distance to the edge of a particular lot belonging to Lowther. Lowther dedicated this portion of Wellington Road to the county. A final portion of the original road continues on for another 168 feet running along the edge of Lowther's property until it meets the gate to Pittman's "house tract." It is this last 168 feet of Wellington Road that remains in controversy.[3]

Pittman brought an action to declare an easement by prescription, necessity, or dedication across 168 feet of Wellington Road running through Lowther's land. After a bench trial, the court issued an order granting Pittman a private prescriptive easement over Wellington Road providing access to Highway 278 across Lowther's property.

## LAW/ANALYSIS

### I. Continuous and Uninterrupted Use

■ Lowther argues the trial court erred in concluding Pittman established a private prescriptive easement because

---

**3.** The Lowthers are developing a subdivision on their property. The disputed portion of Wellington Road runs across 168.83 feet of a lot designated as lot # 12.

the evidence does not support a factual finding that Pittman's adverse use was continuous and uninterrupted. Because the trial court reached inconsistent factual findings, it erred in concluding Pittman's use was continuous and uninterrupted during the alleged prescriptive period.[4]

■ "The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Slear v. Hanna,* 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998). The trial court relied upon the following standard set forth in *Morrow v. Dyches,* 328 S.C. 522, 492 S.E.2d 420, 423 (Ct.App.1997) to find that Pittman should be granted a prescriptive easement. "To establish a prescriptive easement, one must show: (1) continued use for 20 years, (2) the identity of the thing enjoyed, and (3) use which is adverse or under claim of right." *Id.* (citing *Horry County v. Laychur,* 315 S.C. 364, 434 S.E.2d 259 (1993)). *Laychur,* however, emphasized as to the first prerequisite not only that there must be a continued use for twenty years, there must be "continued and *uninterrupted* use or enjoyment of the right for a period of 20 years." *Laychur,* 315 S.C. at 368, 434 S.E.2d at 261 (emphasis added).[5] The uninterrupted requirement is the focal point here.

The trial court's order stated the only interruption in Pittman's use of the challenged portion of Wellington Road was during the failed mediation. However, the court also found Pittman had broken open more than $2,000 worth of barriers costing approximately $200 each "exercising his perceived right to use the road." The barriers the trial court mentioned were erected by Lowther specifically for the purpose of preventing Pittman from utilizing the roadway, and not merely for Lowther's own use or convenience. On direct examination, Mr. Pittman was asked if he had used the road uninterruptedly from the time he bought the tract, and he responded, "Not

---

4. Because we hold Pittman did not enjoy continuous and uninterrupted use of the road segment in question, we need not address Lowther's other arguments concerning the existence or extent of the claimed easement.

5. *See generally Hartley v. John Wesley United Methodist Church of Johns Island,* Op. No. 3642, 355 S.C. 145, 150–52, 584 S.E.2d 386, 388–89 (2003), for a discussion as to the discrepancy in the correct standard to apply in determining the existence of an easement by prescription.

completely." He stated that five or six years after the Lowthers bought the adjoining property, they started putting obstacles in the way trying to close the road, but that he "pushed them down or went around them...." He also testified the Lowthers later "put up gates and put up cables," but after the attempted mediation failed, he pushed down the wire and cable the Lowthers had erected across the road.

Mitchell Lowther testified regarding efforts made to prevent Pittman from using the road. In addition to setting posts and bolting cables across it, the road was plowed every year and planted with rye a couple of years. Lowther testified he tried to be a good neighbor and, when he found Pittman had driven around a cable or pushed a cable down, he would calmly put the cable back up to try to cause as little problem as possible. Nevertheless, he eventually reported Pittman's actions to law enforcement and had a deputy come see where Pittman had used his tractor to not only push over posts and cables, but uproot a couple of small trees and scrape the road with his tractor. Pittman stipulated that he had done so.

Lowther's repeated attempts to prevent Pittman from crossing Lowther's land constitute interruptions, however brief, in Pittman's use and enjoyment of that portion of Wellington Road. *See* 25 Am.Jur.2d, *Easements* § 69 (1996) ("Any unambiguous act of the owner of the land which evinces his intention to exclude others from the uninterrupted use of the right claimed breaks its continuity so as to prevent the acquisition of an easement therein by prescription.... Though the mere erection of gates by the servient owner for the greater convenience of his operations, and not as a barrier to passage, will not defeat a claim to a prescriptive easement of passage, an easement of way cannot arise by prescription if the owner of the servient estate has habitually broken or interrupted its use at will by the maintenance of gates.") (footnotes omitted). Therefore, the trial court erred in concluding Pittman enjoyed uninterrupted adverse use of the land for the 20–year period necessary to establish an easement by prescription.

## II. Easement by Dedication

As an alternate sustaining ground, Pittman urges us to find the existence of an easement by dedication. The record is devoid of evidence to support this contention.

 "It is generally held that when the owner of land has it subdivided and platted into lots and streets and sells and conveys the lots with reference to the plat, he thereby dedicates said streets to the use of such lot owners, their successors in title, and the public." *Blue Ridge Realty Co. v. Williamson,* 247 S.C. 112, 118, 145 S.E.2d 922, 924–25 (1965). "Two elements are required to perfect [public] dedication. First, the owner must express in a positive and unmistakable manner the intention to dedicate his property to public use. Second, there must be acceptance of such property by the public." *Laychur,* 315 S.C. at 368, 434 S.E.2d at 261. However, as between the original landowner and his grantee, the dedication is complete when the conveyance is made. *Blue Ridge Realty Co.,* 247 S.C. at 119, 145 S.E.2d at 925.

Pittman does not clearly indicate whether the purported easement by dedication is public or private. However, the distinction is without consequence because there is no evidence any prior landowner intended to dedicate an easement in the use of Wellington Road. Pittman argues the plat referenced in the deed when he purchased the 2,340 acre tract from Wall shows part of Wellington Road, including a part of the 168 feet in dispute. However, as one of Pittman's own witnesses testified, the plat created for that sale does not show Wellington Road. Nor is it shown on the plat referenced in the deed conveying the 279 acre tract to Pittman.

Two plats in the record do show Wellington Road. The first was the one created for and referenced in the conveyance of the entire 3,000 acres from Good Hope Corporation to Wall. This plat shows the entire plantation's road system. However, because the plat was not created as part of a subdivision of the land, the display of the old plantation roads cannot be considered a positive and unmistakable intention to dedicate them to the public. Even though this plat is also referenced in the 2,340 acre deed from Wall to Pittman, the absence of roads on the plat created specifically for *that* conveyance belies the existence of a dedication of Wellington Road to either the public or Pittman individually.

The second plat that shows Wellington Road was created when Wall was planning to subdivide and sell at auction the land adjoining Pittman's 279 acre tract. The auction was held,

but Lowther offered more than the combined individual lot bids and thus purchased the entire tract. The subdivision was never created. Furthermore, although the plat was referenced in the deed conveying the property to Lowther, the deed specifically states the reference was for the purpose of describing the outside boundaries, and was not intended to suggest a subdivision was being transferred. Thus, the existence of this document also falls short of a positive and unmistakable intention to dedicate an easement over Wellington Road.

## CONCLUSION

Pittman failed to establish a prescriptive easement in the challenged portion of Wellington Road because his use was not continuous and uninterrupted for the requisite period. Pittman also failed to establish an easement by dedication because the evidence does not demonstrate an express intent by any of the prior landowners to create such. For these reasons, the order on appeal is

**REVERSED.**

CURETON and HOWARD, JJ., concur.