610 S.E.2d 479

**Harold PITTMAN, Petitioner,**

v.

**C.E. LOWTHER, Respondent.**

No. 25946.

Supreme Court of South Carolina.

Heard Nov. 18, 2004.

Decided Feb. 22, 2005.

Rehearing Denied April 7, 2005.

Darrell Thomas Johnson, Jr. and Mills L. Morrison, Jr., both of Law Offices of Darrell Thomas Johnson, Jr., of Hardeeville, for Petitioner.

H. Fred Kuhn, Jr., of Moss, Kuhn & Fleming, P.A., of Beaufort, for Respondent.

Justice BURNETT.

We granted a writ of certiorari to review the Court of Appeals' decision reversing the trial court's order granting Harold Pittman (Petitioner) a private easement by way of prescription across C.E. Lowther's (Respondent's) property. *Pittman v. Lowther*, 355 S.C. 536, 586 S.E.2d 149 (Ct.App. 2003). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In 1972, Weldon Wall purchased Good Hope Plantation from Good Hope Corporation. At that time, trails and plantation roads crossed the 3,000–acre tract. One such road, known as Wellington Road, continues to exist and is the subject of this dispute.

Wall divided Good Hope Plantation into two parcels: Parcel A contained approximately 2,340 acres and Parcel B contained approximately 661 acres. Both parcels have frontage on Highway 278. In 1973, Wall sold Parcel A to Petitioner. Mary Wilcox later purchased Parcel B at a foreclosure sale.

In 1975, Petitioner bought 279 acres of Parcel B. The 279–acre parcel purchased by Petitioner did not abut any public roads. At the time Petitioner purchased the 279–acre tract of land there was a hunting lodge on it, which Petitioner then made his home. Petitioner used 168 feet of Wellington Road to travel to his home. Around 1980, Petitioner built a road, which served as an additional driveway, leading from his home to Highway 278, crossing his 2,340–acre tract of land. The Wellington Road driveway is more convenient for Petitioner to use because it is closer to town. In 1976, Wilcox sold approximately 312 acres to Respondent. The 168–foot portion of Wellington Road in dispute crosses over Respondent's land.

Around 1982, Respondent began to place obstacles such as setting posts and cables across Wellington Road to prevent Petitioner from using the road. Petitioner continued to drive on Wellington Road, either going around the obstacles or pushing them down. Respondent replaced the obstacles when Petitioner ignored or destroyed them. Respondent reported Petitioner's actions to law enforcement authorities when Petitioner used his tractor to uproot a couple of small trees and scraped the road with his tractor.

In 1992, Petitioner stopped using the road for about four or five months while a mutual friend attempted to mediate the dispute. The attempt to mediate was unsuccessful and Petitioner resumed use of Wellington Road.

The trial court concluded Petitioner established a private prescriptive easement to the portion of Wellington Road in dispute. The Court of Appeals reversed, concluding the trial court erred in finding Petitioner enjoyed uninterrupted adverse use of the land for the twenty-year period necessary to establish an easement by prescription. The Court of Appeals concluded Respondent's repeated attempts to prevent Petitioner from crossing Respondent's land constituted interruptions in Petitioner's use and enjoyment of the disputed portion of Wellington Road.[1]

---

1. The Court of Appeals also concluded the record was devoid of evidence supporting Petitioner's contention he gained the easement by dedication. We granted certiorari to consider this issue and now dismiss certiorari as improvidently granted.

## ISSUE

Did the Court of Appeals err in concluding Petitioner does not have a prescriptive easement over Respondent's property because Petitioner's use was interrupted during the requisite twenty-year period?

## LAW/ANALYSIS

■ The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury. *Slear v. Hanna,* 329 S.C. 407, 496 S.E.2d 633 (1998). To establish a prescriptive easement, there must be continued and uninterrupted use or enjoyment of the right for a period of twenty years, identity of the thing enjoyed must be proven, and use must be adverse or under claim of right. *Horry County v. Laychur,* 315 S.C. 364, 434 S.E.2d 259 (1993).

Petitioner argues Respondent's efforts to interrupt Petitioner's use were ineffective and, therefore, did not prevent Petitioner's use from ripening into possession. Petitioner testified he has used Wellington Road continuously from approximately 1972 until 1992 or sometime thereafter.

■ We have not previously addressed the issue of what constitutes an interruption in the context of establishing a prescriptive easement where the owner of the servient tenement erects barriers that are repeatedly ignored by the owner of the dominant tenement. Numerous courts have held when the potential servient owner, by either threats or physical barriers, succeeds in causing a discontinuance of the use, *no matter how brief,* the running of the prescriptive period is stopped. 4 Powell on Real Property § 34.10[3][b] (2000); *see also Talbot's, Inc. v. Cessnun Enterprises, Inc.* 566 P.2d 1320 (Alaska 1977) (property owner's action in conspicuously blocking off area contained in alleged easement prevented user from acquiring easement by prescription); *Kelley v. Westover,* 56 Ark.App. 56, 938 S.W.2d 235 (1997) (prescriptive easement did not vest in neighbor where owner built fences and placed various obstructions on property); *Serrano v. Grissom,* 213 Cal.App.2d 300, 28 Cal.Rptr. 579 (1963) (use interrupted by servient owners plowing up wheeltrack road and farming land the road formerly crossed); *Ludwick v. Kassenbrock,* 253

S.W.2d 628 (Ky.1952) (running of prescriptive period stopped by closing of passway); *Pugh v. Conway,* 157 Ind.App. 44, 299 N.E.2d 214 (1973) (use interrupted when servient landowner planted a garden on most of disputed area); *Dalton v. Real Estate & Improvement Co.,* 201 Md. 34, 92 A.2d 585 (1952) (use interrupted by physical barrier); *Rice v. Miller,* 306 Minn. 523, 238 N.W.2d 609 (1976) (servient landowner's efforts interrupted prescriptive period even though efforts on landowner's part were not ultimately successful in that public circumvented or removed barriers); *Ormiston v. Boast,* 68 Wash.2d 548, 413 P.2d 969 (1966) (placing fence across road interfered with continuous use).

Petitioner urges us to adopt the analysis applied by the North Carolina Supreme Court in *Concerned Citizens of Brunswick County Taxpayers Ass'n v. State,* 329 N.C. 37, 404 S.E.2d 677 (1991). In *Concerned Citizens,* the court concluded ineffective interruptions will not prevent use from ripening into an easement. *Id.* In that case, the landowner made escalating attempts to stop the public from trespassing on its land, first by putting up "no trespassing" signs. It then placed a telephone pole across the road which the public drove around. Its next step was a padlocked cable that eventually grew to 200 feet long in an attempt to stop the public from bypassing it. Finally, the landowner used locked gates, a guardhouse, and guards, all of which proved unavailing. The majority of the court treated the persistent trespassing as proof of the adversity of the public's use.

We decline to adopt the analysis applied by the North Carolina Supreme Court and conclude a more reasoned approach was articulated by the Oregon Court of Appeals in *Garrett v. Mueller,* 144 Or.App. 330, 927 P.2d 612 (1996). The court embraced the opinion of Justice Oliver Wendell Holmes Jr., who stated the following in determining what a landowner must do to interrupt prescriptive use.

A landowner ... is not required to battle successfully for his rights. It is enough if he asserts them to the other party by an overt act, which, if the easement existed, would be a cause of action. Such an assertion interrupts the would-be dominant owner's impression of acquiescence, and the growth in his mind of a fixed association of ideas; or, if the principle of prescription be attributed solely to the

acquiescence of the servient owner, it shows that acquiescence was not a fact.

*Garrett,* 927 P.2d at 617 (quoting *Brayden v. New York, N.H. & H.R. Co.,* 172 Mass. 225, 51 N.E. 1081, 1081–82 (1898)).

We conclude actions are sufficient to interrupt the prescriptive period when the servient landowner engages in overt acts, such as erecting physical barriers, which cause a discontinuance of the dominant landowner's use of the land, no matter how brief. In addition to physical barriers, verbal threats which convey to the dominant landowner the impression the servient landowner does not acquiesce in the use of the land, are also sufficient to interrupt the prescriptive period. To adopt an interpretation of "effective interruption" which requires a servient landowner to take actions in addition to erecting barriers like fences and cables, would encourage wrongful or potentially violent behavior that is contrary to sound public policy considerations and the peaceful resolution of disputes.

Turning to the present case, we conclude Respondent's actions were sufficient to interrupt Petitioner's use of the land for the prescriptive period. Not only did Respondent set posts and cables across it, but Respondent also plowed the road every year and planted the road with rye a couple of years. When Petitioner removed the barriers, Respondent replaced them. Respondent also called law enforcement authorities when Petitioner used his tractor to destroy the barriers. Respondent's actions caused Petitioner to discontinue use of the land, albeit briefly, and were certainly sufficient to leave Petitioner with the impression that Respondent did not acquiesce in the use of his land.

For the foregoing reasons, we affirm the Court of Appeals' decision.

**AFFIRMED.**

MOORE, A.C.J., WALLER, J., and Acting Justices REGINALD I. LLOYD and R. MARKLEY DENNIS, Jr., concur.