**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1114-20

JEH CAPITAL HOLDING, LLC,

     Plaintiff-Appellant,

v.

556 NORTH MAIN STREET
LIMITED LIABILITY
COMPANY,

     Defendant,

and

CANNONBALL
STEWARTSVILLE, LLC,

     Defendant-Respondent.

_____

          Submitted September 20, 2021 – Decided November 16, 2021

          Before Judges Messano and Accurso.

          On appeal from the Superior Court of New Jersey, Chancery Division, Warren County, Docket No. C-016005-19.

Gross McGinley, LLP, attorneys for appellant (Loren L. Speziale and Adrian K. Cousens, of counsel and on the briefs).

Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, attorneys for respondent (Donald E. Souders, Jr., and Ruby Khallouf, of counsel and on the brief).

PER CURIAM

In 1983, the owners of Block 23, Lot 28 on the tax map of Greenwich Township, subdivided the parcel into Lots 28 and 28.01. Plaintiff, JEH Capital Holdings, LLC, the owner of Lot 28 since 2002, filed a quiet title action against defendants, 556 North Main Street, LLC (North Main), the owner of Lot 28.01, and Cannonball Stewartsville, LLC (defendant), who, at the time, was the contract purchaser of Lot 28.01.[1] Plaintiff claimed it held a prescriptive easement (the access easement) over defendant's property to access a parking pad at the rear of Lot 28, as well as an easement to park one vehicle in the northwest corner of Lot 28.01 (the parking easement).

Defendant moved for summary judgment, which the judge granted in part. She dismissed plaintiff's claim to the access easement, finding it failed to demonstrate continuous use of the easement for the requisite thirty-year period.

---

[1] North Main sold Lot 28.01 to Cannonball during the course of the litigation, and the court filed the parties' stipulation of dismissal with prejudice.

The order further provided defendant stipulated to "plaintiff's right to utilize" the parking easement without interference.[2] This appeal followed.

Essentially, plaintiff contends the judge misapplied summary judgment standards by failing to accord it the benefit of all favorable evidence and inferences in the motion record. We agree and reverse.

## I.

An appellate court reviewing a summary judgment order must "confine [itself] to the original summary judgment record." Lombardi v. Masso, 207 N.J. 517, 542 (2011). In support of its motion, defendant supplied the certification of James L. Pfeiffer, Jr., whose family purchased Lot 28.01 in November 1987. According to Pfeiffer, he submitted a proposed site plan to the local planning board prior to the purchase; there was no indication of parking spaces or a gravel parking area at the rear of Lot 28. Pfeiffer stated that the rear of Lot 28 was not used for parking from 1987 until 1993, when Bernadette Izzo-Yasinowsky purchased the property. According to Pfeiffer, it was Izzo-Yasinowsky who first allowed her tenants to use the rear area for parking and placed gravel there to facilitate their use of the space.

---

[2] It is undisputed that the parking easement in favor of Lot 28 was retained in the first deed conveying Lot 28.01 following the subdivision in 1983 and in subsequent conveyances in the motion record.

Pfeiffer said his family objected to the use of their property, Lot 28.01, by others to access the parking area at the rear of Lot 28. He claimed there were "numerous personal confrontations," leading the Pfeiffer family to park "a vehicle so as to block access to the rear yard of Lot 28 for parking." Pfeiffer said access to the rear of Lot 28 was "blocked until [the Pfeiffer family] sold Lot 28.01 on December 27, 2004." In addition, Pfeiffer said that after Izzo-Yasinowsky sold Lot 28 in 2000, neither her successor-in-interest nor plaintiff ever "asserted a right of access across Lot 28.01 to the rear of Lot 28."

In 1997, Izzo-Yasinowsky successfully obtained the local planning board's approval for variances to use 500 square feet of the existing building on Lot 28 for an antique and furniture shop. Notably, the board recognized only the deeded single parking space on Lot 28.01 in considering the request for a variance from the zoning regulations' off-street parking requirement. The board's resolution, however, included the following:

> Mr. Pfeiffer[, Jr.] advised that while his father does not object to the applicant's commercial use of the structure, his primary concern centers upon the absence of sufficient off-street parking relative to the applicant's customers or tenants utilizing his property for that purpose to which he objects.
>
> [(emphasis added).]

Plaintiff's opposition included a certification from Derek A. Storm, a partner in Montauk Holdings (Montauk), which purchased Lot 28 in 1987 from the couple who retained ownership of Lot 28 after the subdivision. Montauk sold the property to Izzo-Yasinowsky in 1993. According to Storm, during Montauk's ownership, he and his residential tenants used a "parking pad" at the rear of the structure on Lot 28 only accessible "by driving onto and over Lot 28.01." Storm claimed, "[a]t no time . . . did anyone object to . . . vehicles accessing the parking pad on Lot 28 by driving onto and over Lot 28.01." Storm said the Pfeiffer family owned Lot 28.01 during all of Montauk's ownership of Lot 28 and never "object[ed] to or block[ed] . . . use of the parking pad or access onto and over Lot 28.01."

Plaintiff supplied a second certification from Timothy Daley, a member of TMK Holdings, LLC (TMK), which purchased Lot 28 from Izzo-Yasinowsky in 2000 and sold it to plaintiff in 2002. Daley also certified that in order to access the deeded parking space on Lot 28.01, TMK's residential tenants drove "onto and over" the paved areas of Lot 28.01. Daley said that at no time during the company's ownership of Lot 28 did anyone object to tenants accessing the parking pad behind the building by driving onto and over Lot 28.01. Furthermore, Daley claimed that he interacted personally with the owners of Lot

5

28.01, presumably, the Pfeiffers, and they never blocked or objected to accessing the parking pad over their lot.

Plaintiff's principal, Robert Haver, also filed a certification, stating that it obtained the property in 2002, the residents of Lot 28's building used the parking pad at the rear of the building and accessed the pad by driving over Lot 28.01. According to Haver, no one had ever blocked access or objected to him or his tenants accessing the parking pad by driving on and over Lot 28.01.

Defendant filed a reply that included a new certification from James Pfeiffer, Sr. He said that Izzo-Yasinowsky "instruct[ed] and/or allow[ed] her tenants to park in the rear yard of Lot 28," implying it had never happened before. The senior Pfeiffer certified that he objected, parked a car on Lot 28.01 to block access, and "installed a chicken wire fence on Lot 28.01 across the entrance to the parking pad to impede access . . . ." Pfeiffer noted that Izzo-Yasinowsky sold Lot 28 in 2000, and he and his family sold Lot 28.01 in 2004; the certification was silent regarding access to the parking pad during those four years.

The judge considered oral arguments. Defendant contended that plaintiff had no express easement except for the single parking spot reserved by deed, and plaintiff failed to satisfy the legal requirements for a prescriptive access

6

easement.  Defendant also argued that plaintiff could not utilize a parking pad at the rear of Lot 28's structure because it was over an active septic system and prohibited by regulation and local zoning ordinances.  The judge reserved her decision.  In the written statement of reasons supporting the order, the judge carefully reviewed the statements of material facts both parties submitted and the arguments each made in support of, and opposition to, the motion.

She concluded that "the express easement" to the single parking spot in the northwest corner of Lot 28.01 granted by deed was "silent on the matter of whether [plaintiff] or its predecessors in title may access the parking pad over Lot 28.01."  The judge also rejected defendant's argument regarding the legality of the parking pad's placement over a septic system.

The judge squarely addressed the elements of plaintiff's claim to a prescriptive easement over Lot 28.01 to access the parking pad.  She noted that "[t]he proponent of an easement by prescription must show an adverse use of land that is exclusive, continuous, uninterrupted, visible, open, and notorious." (citing Mannillo v. Gorski, 54 N.J. 378, 386–87 (1969)).  The judge concluded that plaintiff had produced sufficient evidence to demonstrate exclusivity of its adverse use of a portion of Lot 28.01, and that its use was open and notorious.

A-1114-20

However, the judge reasoned "[t]he primary question . . . [was] whether [plaintiff] has presented enough evidence to establish a genuine dispute of fact over the continuous use for the thirty-year statutory period." See Yellen v. Kassin, 416 N.J. Super. 113, 119–20 (App. Div. 2010) ("In order to establish an easement by prescription, a litigant must prove elements similar to those associated with adverse possession." (citing Mahony v. Danis, 95 N.J. 50, 58 (1983) (Schreiber, J. dissenting)); N.J.S.A. 2A:14-30 (providing thirty years' possession to establish adverse possession of any real estate). The judge cited the three certifications plaintiff furnished in opposition, establishing that Montauk, TMK and plaintiff used the parking pad and accessed it over Lot 28.01 from 1987 to1993, and again from 2000 to the 2019 filing of the complaint. She noted plaintiff's allegation that Izzo-Yasinowsky and her tenants used the parking pad during her ownership, i.e., the years between Montauk's and TMK's ownership of Lot 28.

The judge then referenced Pfeiffer Jr.'s certification, which contradicted Storm's certification about Montauk's use of a parking pad and claimed that Izzo-Yasinowsky first began using the pad in 1993. The judge concluded, "there is a genuine issue of fact over when the parking pad was first used and whether Montauk used it . . . ." The judge also noted the Pfeiffers' certifications stating

8

they blocked access to the pad until they sold Lot 28.01 in 2004, which contradicted the certifications of Daley and Haver, plaintiff's principal.

Noting a "glaring gap between 1993 and 2000" caused by the absence of any sworn statement from Izzo-Yasinowsky, the judge rejected plaintiff's argument that it planned to subpoena her at trial, noting plaintiff "cannot rely on hypothetical testimony." Instead, the judge "looked to other evidence . . . to determine whether there [was] a genuine issue of fact with respect to Izzo-Yasinowsky's continuous use of the parking pad."

She rejected the planning board's resolution, which noted the Pfeiffers' objection to permitting parking on Lot 28.01 as "sufficient proof that Izzo-Yasinowsky used the parking pad and accessed it over Lot 28.01 for the entirety of her ownership." The judge reasoned "[t]he most the [r]esolution provides is an inference that Izzo-Yasinowsky used the parking pad and accessed it over Lot 28.01 during her ownership up to [the date of the resolution — 1997], but not through the entirety of her ownership . . . ." The judge found that plaintiff "failed to present sufficient evidence to prove that it[,] or its predecessors[-]in[-]title[,] use[d] the parking pad and accessed it through Lot 28.01 continuously for the statutory period of thirty years, so as to overcome [defendant's] request for summary judgment."

9 <span></span>

She entered the order under review dismissing plaintiff's claim for a prescriptive easement over Lot 28.01 to access a parking pad at the rear of the structure on Lot 28.

II.

We review the grant of summary judgment de novo, applying the same standard used by the trial court, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co.of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (quoting R. 4:46-2(c))).

"'If there is no genuine issue of material fact,' then we must 'decide whether the trial court correctly interpreted the law.'" Richter v. Oakland Bd.

10

of Educ., 459 N.J. Super. 400, 412 (App. Div. 2019) (quoting DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013)). "The 'trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013) (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review questions of law de novo. Zabilowicz v. Kelsey, 200 N.J. 507, 512–13 (2009).

Here, plaintiff essentially contends the judge failed to properly consider the evidence it marshaled raising a genuine material factual dispute regarding the continuous use of the access easement over Lot 28.01.[3] We agree.

"To establish an easement by prescription, a claimant must show a use which is adverse or hostile, exclusive, continuous, uninterrupted, visible and notorious for a period of [thirty] years." Mandia v. Applegate, 310 N.J. Super. 435, 443–44 (App. Div. 1998) (citing Baker v. Normanoch Ass'n, 25 N.J. 407, 419 (1957)). "The proponent of the easement must establish the elements by the preponderance of the evidence." Yellen, 416 N.J. Super. at 120 (citing Patton

---

[3] In their briefs, both parties agree that only the "continuous" element of a claim for a prescriptive easement is at issue.

v. N. Jersey Dist. Water Supply Comm'n, 93 N.J. 180, 187 (1983)). Under the principle of "tacking," successors-in-interest may establish the requisite statutory period if "each owner who acquires title . . . satisf[ies] all the elements." Stump v. Whibco, 314 N.J. Super. 560, 568 (App. Div. 1998) (citation omitted).

The judge found that plaintiff "failed to present sufficient evidence to prove that it, or its predecessors[-]in[-]title used the parking pad and accessed it over Lot 28.01 continuously for the statutory period of thirty years, so as to overcome [defendant's] request for summary judgment." However, as the non-moving party, plaintiff did not have to "prove" the elements of a continuous prescriptive easement. The plaintiff was entitled to all favorable evidence and inferences in the motion record and only needed to raise a genuine issue of disputed material fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995). Defendant bore the burden of demonstrating the evidence failed to present "a sufficient disagreement to require submission to a jury or . . . it [wa]s so one-sided that [defendant] must prevail as a matter of law." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

The judge credited the two Pfeiffer certifications as eliminating any disputed fact regarding the continuity of use, accepting as unrebutted their

assertions of cutting off the continuous use of the access easement during some, but not all, of Izzo-Yasinowsky's ownership of Lot 28. Even though plaintiff failed to offer a certification from Izzo-Yasinowsky — something the judge characterized as a "glaring gap" — there was much in the motion record that disputed the Pfeiffers' claims.

Pfeiffer, Jr.'s statement that the rear of Lot 28 was not used for parking from 1987, when his family purchased Lot 28.01, until 1993, when Izzo-Yasinowsky purchased the property and first let her tenants park on the pad, and Pfeiffer, Sr.'s implicit corroboration of that assertion, was directly rebutted by Storm's certification. Pfeiffer, Jr.'s claim that none of Izzo-Yasinowsky's successors-in interest ever asserted a right of access was contradicted by the certifications of Daley and Haver, who both owned Lot 28 prior to the sale of Lot 28.01 by the Pfeiffers.

The judge seemingly concluded statements that the Pfeiffers blocked access to the pad by first parking a car on Lot 28.01, and Pfeiffer, Sr.'s statement that he put a chicken wire fence "across the entrance to the pad," definitively defeated plaintiff's claim to a prescriptive easement because these actions "cut off" continuous use. Initially, however, both Daley, who purchased the property from Izzo-Yasinowsky, and Haver affirmed that while they owned Lot 28 during

13

the Pfeiffers' ownership of Lot 28.01, their use of the prescriptive easement was not impaired by a parked car, a chicken wire fence or by any other means.

Moreover, "[e]ffective interruption means that the owner must cause the prescriptive user to stop the use, resort to a statutory procedure that produces an interruption or 'bring a legal action that results in establishing the landowner's right to terminate the use.'"  7 David A. Thomas, et al., Thompson on Real Propery, § 60.03(b)(6)(viii) (2d ed. 2006) (quoting Restatement (Third) of Prop.: Servitudes § 2.17 (Am. Law. Inst. 2000) (Tent. Draft No. 3, 1993)).  Parking a car to block access was likely temporary in nature and hardly the type of action that sufficiently terminated an interest in the putative prescriptive easement.

Additionally, it was not obvious from this record that the erection of chicken wire resulted in an effective interruption in Izzo-Yasinowsky's use of the easement to access the parking pad.  See Stump, 314 N.J. Super. at 569 (discussing "interruption" of continuity of adverse possessor by actions of the "true owner"); Compare Concerned Citizens of Brunswick Cnty Taxpayers Ass'n v. State, 404 S.E.2d 677, 686 (N.C. 1991) ("To effectively defeat a prescriptive right, an interruption of the use must be accompanied by some act of the owner which prevents the use of the easement.") (citing 2 George W. Thompson, et al., Thompson on Real Property, § 347, at 257 (1980)), with

14

Pittman v. Lowther, 610 S.E.2d 479, 481 (S.C. 2005) ("We conclude actions are sufficient to interrupt the prescriptive period when the servient landowner engages in overt acts, such as erecting physical barriers, which cause a discontinuance of the dominant landowner's use of the land, no matter how brief.")).

Finally, the unusual shape of Lot 28.01 resulting from the subdivision must be considered in determining whether there is a genuine material factual dispute about the continuous use of a putative prescriptive easement permitting access to the parking pad. It is undisputed that to access the deeded easement for the single parking space on Lot 28.01, a car must traverse a portion of Lot 28.01, either from Greenwich Street or North Main Street.[4] Defendant does not dispute the use of the deeded parking easement necessitates some limited access easement over its property. It only disputes whether that access permits a second car to turn onto the parking pad.

---

[4] From the record, we gather that defendant's approved 2018 development application anticipated the resulting one-way flow of traffic around the building housing its business, entering from North Main Street and exiting on Greenwich Street, with entry from Greenwich Street prohibited. In any event, the location of the deeded parking spot means a vehicle must travel over some portion of Lot 28.01 to access the space, as would the same vehicle trying to access the parking pad.

In sum, applying proper summary judgment standards, plaintiff raised sufficient material factual disputes about the continuous use of a prescriptive easement permitting access to a parking pad at the rear of the structure on Lot 28.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1114-20