Ken ALLEN and his wife, Dolores
A. Allen, Appellants,

v.

William R. THOMAS, Appellee.

No. 2005–CA–000305–MR.

Court of Appeals of Kentucky.

July 7, 2006.

Discretionary Review Denied by
Supreme Court Jan. 18, 2007.

Patricia Ann Day, Madisonville, KY, for appellant.

William R. Thomas, Madisonville, KY, for appellee.

Before COMBS, Chief Judge; DYCHE [1] and HENRY, Judges.

## OPINION

HENRY, Judge.

Ken and Dolores Allen appeal from a judgment of the Hopkins Circuit Court granting appellee William Thomas and the general public a prescriptive easement over their property. Upon review, we reverse and remand with directions to enter a judgment for the Allens.

On May 14, 1999, the Allens purchased from Thornton and Mary Cullen 112 acres of land located on the waters of Clear Creek at Kentucky Highway 293 in Hopkins County, Kentucky. On this property is a partially-graveled dirt roadway extending from Highway 293 to the waters of Clear Creek. This roadway begins at the highway, approximately 600 feet south of a

---

1. Judge R.W. Dyche concurred in this opinion prior to his retirement effective June 17, 2006.

bridge spanning the creek, then runs in an easterly direction for approximately 120 feet and then in a northerly direction for approximately 500 feet before ending at the creek.

The record—which is somewhat limited in this case—indicates that the roadway had been used by hunters and fishermen for as long as 52 years to gain access to Clear Creek. However, after purchasing the property from the Cullens, the Allens attempted to close off access to the roadway by installing a variety of chains, gates, cables, and signs.

Consequently, on May 25, 2000, Thomas filed a complaint against the Allens in the Hopkins Circuit Court alleging that he and the general public had obtained a prescriptive easement over their property following years of using it as an access route to Clear Creek, given that this use was "unobstructed, open, peaceable, continuous and as of right for the prescribed statutory period greater than fifteen (15) years." The complaint further alleged that Thomas and the general public had been deprived of using this alleged easement by the Allens' use of chains and cable to close off access to their property from Kentucky Highway 293, and it requested that such obstructions be ordered removed. Thomas was later allowed to amend this complaint to provide that the property had been used in a manner that was "adverse, actual, open, notorious, forcible, exclusive, and hostile to the property owners" for at least 15 years.

The parties appeared before the trial court on November 5, 2002, prepared for trial. However, after consultation with counsel and the parties, the trial court entered a number of stipulations into the record in lieu of conducting a trial on the merits. On January 16, 2003, the court entered an order setting forth its findings of fact and conclusions of law as to the issue of whether a prescriptive easement existed. The court first made the following findings of fact "based upon the stipulations of the parties as well as facts which both parties have recited in their pleadings":

On May 14, 1999, defendants Ken Allen and Dolores Allen, purchased approximately 112 acres from Thornton Cullen and his wife located on the waters of Clear Creek at Kentucky Highway 293 in Hopkins County, Kentucky.

Hunters and fishermen, or the general public has (sic) gained access to Clear Creek from Kentucky Highway 293 across a roadway which cross (sic) the property owned now by Mr. Allen. The roadway has been used for about 52 years.

The roadway access is somewhat depicted on an aerial photograph which was submitted into evidence and generally runs in this area to the waterline of the creek, depending upon the water level. However, the parties dispute the exact location, but for purposes of determining whether an easement has been acquired, the Court will not consider that dispute.

The parties further stipulated that Clear Creek is an applicable (sic) water way at various times of the year.

The parties also stipulated that testimony would have been that use of the property by the general public has been open, notorious, adverse, continuous, under a claim of right, and without request for or permission given by the owners for a period of greater than 15 years. The parties also agreed that barricades have been put up and access to the property was denied for a period of time.

It was agreed by the parties that there is a clearly marked and identifiable roadway that is traveled from High-

way 293 to the waterline of the creek, and it goes approximately 123 feet from the top of the roadway to a tree. However, there is a dispute as to whether it actually accesses the creek.

Based upon these findings, the court concluded that there was a sufficient showing of "adverse use for more than 15 years," and held that "while [it] believes the Defendant to be an innocent victim, the fact remains that Plaintiffs have established their right to a prescriptive easement across Defendants' property from Kentucky Highway 293 to Clear Creek." On January 10, 2005, the court entered a supplemental order setting forth a specific description of the easement and enjoining the Allens from obstructing or otherwise hindering the use of the easement by Thomas or the general public. This appeal followed.

"Since this case was tried before the court without a jury, its factual findings 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . .'" *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky.App. 2001); *see also* CR [2] 52.01. "A factual finding is not clearly erroneous if it is supported by substantial evidence." *Carroll*, 59 S.W.3d at 489. "However, a reviewing court is not bound by the trial court's decision on questions of law. An appellate court reviews the application of the law to the facts and the appropriate legal standard *de novo.*" *Id.*

■■■ It is well-established under Kentucky law that an easement can be created by prescription. *See Illinois Cent. R. Co. v. Roberts*, 928 S.W.2d 822, 827 (Ky.App. 1996). "As with adverse possession of a fee simple estate, a prescriptive easement can be acquired by actual, hostile, open and notorious, exclusive, and continuous possession of the property for the statutory period of fifteen years." *Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, 15 S.W.3d 727, 730 (Ky.2000); *see also* KRS [3] 413.010. However, as easements are not favored under the law, "the right of one to acquire title to an easement, which would deprive the owner of the use of his own property or burden it with a servitude, will be restricted unless it is clearly established by the facts that all the necessary requisites of adverse user have been fully satisfied." *Ben Snyder, Inc. v. Phoenix Amusement Co.*, 309 Ky. 523, 218 S.W.2d 62, 63 (1949); *see also Carroll*, 59 S.W.3d at 489–90. "The acts necessary to acquire an easement by prescription depend on the nature of the interest to be possessed." *Columbia Gas*, 15 S.W.3d at 730; *see also Haynes v. Dennis*, 308 Ky. 483, 214 S.W.2d 1005, 1007 (1948) ("We must keep in mind that in all passway cases the application of the principles and rules governing same must necessarily be determined by the facts of each case.").

■■■ We first address the Allens' argument that the creation of a prescriptive easement for recreational activities such as hunting and fishing has been prohibited by an amendment made to KRS 411.190. The amendment reads: "No action for the recovery of real property, including establishment of prescriptive easement, right-of-way, or adverse possession, may be brought by any person whose claim is based on use solely for recreational purposes." KRS 411.190(8). It was effectuated in 2002 and, according to an affidavit in the record tendered by Kentucky Second District Representative Fred L. Nesler, it was introduced as a house bill in direct

---

**2.** Kentucky Rules of Civil Procedure.

**3.** Kentucky Revised Statutes.

response to his meeting Ken Allen and discovering the nature of the current action. Accordingly, the Allens argue that the provision should be applicable here.

Although there is certainly reason to find the Allens' argument persuasive, we note that KRS 446.080(3) provides that "[n]o statute shall be construed to be retroactive, unless expressly so declared." Indeed, our courts have repeatedly held that "Kentucky law prohibits the amended version of a statute from being applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application." *Commonwealth Dept. of Agriculture v. Vinson*, 30 S.W.3d 162, 168 (Ky.2000). We have specifically found it "improper to apply statutory amendments in a situation where the amendment changed the substantive rights and duties of litigants regarding those events which had occurred prior to the effective date of the amendment." *Id.* at 169. Here, KRS 411.190(8) says nothing about whether or not it is to be applied retroactively, and applying it in such a manner would certainly affect the substantive rights claimed by Thomas with respect to previously occurring events in this case. Accordingly, we decline to apply the provision in such a manner given that the events in question here occurred before the effective date of the amendment.

 The Allens also argue that a prescriptive easement could not be found here because Thomas "never owned or had an interest in real property adjacent to or near the subject property which could establish a dominant tenement," which they contend is a "crucial element in the establishment of a prescriptive easement." However, it is not necessary for a dominant tenement or an interest in real property adjacent to the subject property to exist in order for an easement by prescrip-

tion to be found. *See Inter–County Rural Elec. Co-op. Corp. v. Reeves*, 294 Ky. 458, 171 S.W.2d 978, 983 (1943) ("The distinction between an easement appurtenant to the land and a right of way in gross is that in the former there is, and in the latter there is not, a dominant tenement."); *Meade v. Ginn*, 159 S.W.3d 314, 320 (Ky. 2004) (noting how "[a]n easement in gross acquired by prescription cannot be assigned"). As the prescriptive easement sought here can be categorized as one "in gross," as it "is a mere personal interest in or right to use the land of another", *id.*, we must reject the Allens' position.

The Allens' remaining arguments revolve around the issue of whether the use of the prospective easement has been continuous and uninterrupted. Specifically, they contend that: (1) the running of the 15–year prescriptive period was interrupted repeatedly over the years as a result of efforts to deny access to the property; (2) use of the easement by hunters and fishermen does not constitute use by the "general public" for purposes of creating a public easement; and (3) use of the prospective easement was too sporadic to be continuous. We will address each contention in turn.

The Allens first argue that both they and the previous property owners have taken steps throughout the years to block the entrance to the subject property by erecting fences and gates, by placing large rocks at the entrance to block access, and by posting "No Trespassing" signs around the property. Despite these efforts, they note, persons seeking to use the passway would remove or damage the fences, gates, and signs, and would even move the rocks placed at the entrance.

 "In order to establish that the passway had ripened into a private or a public way, plaintiff must show it was used adversely by him or his predecessors in

title or by the public generally in an open, continuous and uninterrupted manner for 15 years." *Rominger v. City Realty Co.*, 324 S.W.2d 806, 808 (Ky.1959). Accordingly, in order for a prescriptive easement to exist here, the evidence must clearly establish that it was used by the general public in an open, continuous and uninterrupted manner for a 15–year period. *See Carroll*, 59 S.W.3d at 489–90.

It is in examining this issue that we believe the previous efforts by the Cullens and their caretaker, David Crenshaw, to keep trespassers from using their property as a passway take on importance. Although the trial court stated in its findings of fact that "[t]he parties also stipulated that testimony would have been that use of the property by the general public has been open, notorious, adverse, continuous, under a claim of right, and without request for or permission given by the owners for a period of greater than 15 years," the record reflects that the Allens vehemently denied that this use was continuous. Instead, they point to their efforts to deny access to the purported easement over the years as an indication that they had repeatedly attempted to interrupt such use. Thomas disagrees, contending that because the Allens' efforts to close off access to their property were ignored by the public and ultimately failed, its continuous use was never interrupted in a sufficient fashion.

■ Although our courts have previously dealt with the issue of a successful effort to interrupt use of a purported easement and its obvious effect on the "continuous" prong of the prescriptive easement test, *see Ludwick v. Kassenbrock*, 253 S.W.2d 628, 629 (Ky.1952), our research finds that

we have never directly addressed, indepth, the question of what constitutes sufficient interruption of a period of adverse use so as to negate the creation of a prescriptive easement—particularly when an effort to interrupt ultimately fails. We have found cases from other jurisdictions, however, that provide what we believe to be a useful and reasonable perspective on the issue.

For example, in *Pittman v. Lowther*, 363 S.C. 47, 610 S.E.2d 479 (2005), a case similar to this one, the Supreme Court of South Carolina directly addressed the question of what constitutes an interruption in the context of establishing a prescriptive easement where the owner of the purportedly servient tenement made efforts to erect barriers that were repeatedly ignored by those seeking an easement. The petitioner in *Pittman* argued that the respondent's efforts to interrupt his use were ineffective and, therefore, did not prevent said use from ripening into possession. *Id.* at 480. The South Carolina court disagreed. In doing so, the court first noted favorably that "[n]umerous courts have held when the potential servient owner, by either threats or physical barriers, succeeds in causing a discontinuance of the use, no matter how brief, the running of the prescriptive period is stopped." *Id.* at 480–81, citing 4 Powell on Real Property § 34.10[3][b] (2000); *Talbot's, Inc. v. Cessnun Enterprises, Inc.*, 566 P.2d 1320 (Alaska 1977); *Kelley v. Westover*, 56 Ark.App. 56, 938 S.W.2d 235 (1997); *Serrano v. Grissom*, 213 Cal. App.2d 300, 28 Cal.Rptr. 579 (1963); *Ludwick, supra*[4]; *Pugh v. Conway*, 157 Ind. App. 44, 299 N.E.2d 214 (1973); *Dalton v. Real Estate & Improvement Co.*, 201 Md.

---

**4.** We again note that in *Ludwick*, the purportedly servient tenement was ultimately successful in closing the passway in question there from the public. As the facts here concern unsuccessful efforts to close off a passway in the context of a prescriptive easement, we do not consider *Ludwick* particularly useful in our analysis.

34, 92 A.2d 585 (1952); *Rice v. Miller*, 306 Minn. 523, 238 N.W.2d 609 (1976); *Ormiston v. Boast*, 68 Wash.2d 548, 413 P.2d 969 (1966).

The South Carolina court then cited to the decision of the Oregon Court of Appeals in *Garrett v. Mueller*, 144 Or.App. 330, 927 P.2d 612 (1996) and decided to follow that court's lead and "embrace[ ] the opinion of Justice Oliver Wendell Holmes Jr., who stated the following in determining what a landowner must do to interrupt prescriptive use":

> A landowner ... is not required to battle successfully for his rights. It is enough if he asserts them to the other party by an overt act, which, if the easement existed, would be a cause of action. Such an assertion interrupts the would-be dominant owner's impression of acquiescence, and the growth in his mind of a fixed association of ideas; or, if the principle of prescription be attributed solely to the acquiescence of the servient owner, it shows that acquiescence was not a fact.

*Pittman*, 610 S.E.2d at 481, quoting *Brayden v. New York, N.H. & H.R. Co.*, 172 Mass. 225, 51 N.E. 1081, 1081–82 (1898).

Accordingly, the court held that "actions are sufficient to interrupt the prescriptive period when the servient landowner engages in overt acts, such as erecting physical barriers, which cause a discontinuance of the dominant landowner's use of the land, no matter how brief." *Id.* In justifying this holding, the court stated: "To adopt an interpretation of 'effective interruption' which requires a servient landowner to take actions in addition to erecting barriers like fences and cables, would encourage wrongful or potentially violent behavior that is contrary to sound public policy considerations and the peaceful resolution of disputes." *Id.*

After careful consideration, we believe that the aforementioned principles espoused in these decisions should be adopted and applied here. In doing so, we recognize that other jurisdictions have found that no interruption will occur when an owner constructs a barrier for the purpose of interruption that is ultimately unsuccessful in defeating the adverse claimant's use, even when said claimant is briefly forced to discontinue use. *See S. Norwalk Lodge No. 709 v. Palco Hats, Inc.*, 140 Conn. 370, 100 A.2d 735 (1953); *Algermissen v. Sutin*, 133 N.M. 50, 61 P.3d 176 (2002); *Concerned Citizens Taxpayers Ass'n v. State ex rel. Rhodes*, 329 N.C. 37, 404 S.E.2d 677 (1991); *Keefer v. Jones*, 467 Pa. 544, 359 A.2d 735 (1976). However, given that prescriptive easements—by their nature—are founded on acquiescence, *see Lyle v. Holman*, 238 S.W.2d 157, 160 (Ky.1951), we find that clear conduct indicating that a property owner is not acquiescing as to a prospective easement owner's claim of right should rightfully be considered as ending the running of a prescriptive period. Moreover, we believe that our decision here is consistent with our state's long-held policy of disfavoring prescriptive easements. *See Carroll*, 59 S.W.3d at 489–90. We further conclude that it will serve to discourage the type of violent confrontations that could result from forcing a property owner to "successfully" defend his right to keep others off of his land.

The limited evidence in the record reflects that the Cullens—the owners of the subject property from what appears to be 1959 to 1998 (the record is unclear)—repeatedly told trespassers to leave their property, erected "No Trespassing" signs, removed deer stands, and erected barriers to deny access to their property. Accordingly, it appears as if there were numerous

instances in which the running of a prescriptive period was interrupted. At no point in the record can we find any evidence to suggest that there was a 15–year uninterrupted period of use between these events or prior to 1959. As the burden to prove all requirements of a prescriptive easement falls upon the party seeking it, and said requirements must be clearly established by the facts, *see id.,* we conclude that the trial court was clearly erroneous in finding that an easement was proven here, as continuity of use was not adequately shown by Thomas. In so finding we are mindful that the judgment of the trial court rested upon what were characterized as stipulations of fact. After a careful review of the record, we cannot agree with the trial court that the facts as stipulated support a finding of the presence of all the elements necessary to create an easement by prescription. And, while no motion was made for additional findings of fact, we also believe that a finding of error can be justified in the context of the Allens' arguments that use of the easement by hunters and fishermen does not constitute use by the "general public" for purposes of creating a public easement, and that use of the passway was too sporadic to be continuous. Again, although the record is somewhat sparse, it appears that Thomas offered as witnesses to the trial court approximately 118 individuals who would testify that they had previously used the purported easement for the purpose of gaining access to Clear Creek for hunting and fishing.

"It has been pointed out that one of the essentials of the establishment of a road by prescription is the use of the land in question by the public and such use must be by the public generally as a way common to all; the mere use by a few individuals, from time to time, as distinguished from the public generally, does not constitute such use as creates title in the public by prescription." *Rominger,* 324 S.W.2d at 808. We do not believe that the facts before us support a finding that the passway was one used by the "general public." Instead, it appears as if it was used by a select number of individuals at certain times during the year in order to access Clear Creek for the specific purposes of hunting and fishing; moreover, it did not lead to any residences, buildings, or other similar destinations that would be of normal interest to the "general public." Consequently, as the purported easement "did not lead to any place in which the general public would have had an interest in going, there could scarcely have been much if any occasion for the general public to use it." *Cummings v. Fleming County Sportsmen's Club, Inc.,* 477 S.W.2d 163, 165 (Ky.1972). Although we again acknowledge that "[t]he acts necessary to acquire an easement by prescription depend on the nature of the interest to be possessed," *Columbia Gas,* 15 S.W.3d at 730, we simply do not think that the evidence here supports a conclusion that a prescriptive easement for the "general public" has been justified. *Cf. Cole v. Gilvin,* 59 S.W.3d 468, 474 (Ky.App.2001). Under the facts of this case, requiring those who wish to cross the Allens' land to reach the creek to first obtain permission, is consistent with Kentucky law and the rights of property owners.

Accordingly, the case is reversed and remanded with directions to enter a judgment for the appellants.

ALL CONCUR.