NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0384n.06

Case No. 22-1601

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 17, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MOORE FAMILY TRUST; SCOTT MICHAEL MOORE, Trustee, | ) ) ) | |
| Plaintiffs- Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| MICHAEL WILLIAM BINGHAM; PETER EDWARD BINGHAM; WILLIAM DAVID BINGHAM; MARY BINGHAM; DONNA BINGHAM; LAURA CISON; KEVIN SALLESE; ELIZABETH SALLESE; LOUIS TOMASINO; BARBARA TOMASINO; BARRY HEALY; JUDY HEALY; JAMES MARKS; CHRISTINE MARKS; FRANK BERTUCCI; PATRICIA BERTUCCI; BRIAN BURICH; ANTOINETTE BURICH; BRIAN MARTIN; AMIE MARTIN; BINGHAM FAMILY TRUST; SUSAN M. BINGHAM, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | OPINION |
| Defendants- Appellees. | ) | |

Before: CLAY, WHITE, and THAPAR, Circuit Judges.

WHITE, J., delivered the opinion of the court in which CLAY and THAPAR, JJ., joined. THAPAR, J. (pp. 21–23), delivered a separate concurring opinion.

Case No. 22-1601, *Moore Family Trust, et al. v. Bingham, et al.*

HELENE N. WHITE, Circuit Judge. Invoking the court's diversity jurisdiction under 28 U.S.C. § 1332[1], Scott Moore and the Moore Family Trust sued the Bingham family for trespass and nuisance based on their use of a disputed area of land in Michigan's Upper Peninsula.[2] The district court granted summary judgment to the Binghams, finding that they had a prescriptive easement over the land that defeated Moore's claims, and Moore appeals. *Moore Fam. Tr. v. Bingham*, No. 2:19-CV-115, 2022 WL 2619857, at \*1 (W.D. Mich. July 6, 2022). Because we find that genuine issues of material fact remain, we REVERSE and REMAND.

**I.**

Scott Moore's family has owned land along Lake Gratiot in Keweenaw County for over 140 years. In 1980, his grandparents, Bernard and Dolly Eister, sold approximately 45 acres of the land to William E. and Greta Bingham. The deed included an easement over the Eisters' property "for access" from the public road, described as "[a] strip of land Twelve (12) feet in width." R. 214-1, PID 4139.

At some point, the Bingham family turned the easement into a 15-foot-wide gravel road. Moore, who assumed care of his family's property in 1985, attests that he knew that the Binghams

---

[1] Moore is a New York resident, and his family's trust is a New York trust; the Bingham Family Trust is a Michigan trust, and the Bingham individual Defendants are residents of Florida, Illinois, Michigan, and Texas. The Binghams moved to dismiss, arguing that the amount in controversy is below $75,000, but the district court properly found that they failed to support this assertion to a legal certainty, and the Binghams do not challenge that finding. *See Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009).

[2] Pursuant to the operative Third Amended Complaint, Moore, on behalf of himself and the Moore Family Trust (which he manages, and which owns the Moore family's land on Lake Gratiot), sued twenty-one individual members of the Bingham family and the Bingham Family Trust. Defendants-Appellees are Michael, Peter, William, Mary, Donna, and Susan Bingham, Laura Cison, Kevin Sallese, Louis and Barbara Tomasino, Barry and Judy Healy, James and Christine Marks, Frank and Patricia Bertucci, Brian and Antoinette Burich, Brian and Amie Martin, and the Bingham Family Trust. For simplicity, we refer to Plaintiffs-Appellants in the singular as "Moore" and to Defendants-Appellees as "the Binghams" or the "Bingham family," although we discuss individual defendants as relevant. Moore also sued several others in his first complaint. These Defendants—Matthew, Joan, Meghan, and Monica Downey, Nicole Heidrich, and Richard Parker—were dismissed with prejudice after Moore settled claims with them.

were encroaching around this time, but he was coping with a family tragedy and took no immediate action. Michael Bingham, son of William and Greta, attests that his father built the road around 1986 and the family has maintained it and "regularly" used its full 15-foot width ever since. R. 221-2, PID 4862-64.

Moore moved to the lake full-time in 1990 and began a series of challenges to the Binghams' expanded use of the easement. Sometime during the 1990s, he complained to the Binghams' logger about clearing land beyond the original easement. In 1995, he sent a protest letter to William and Greta Bingham "objecting to use of the easement by speeding cars, trucks, and rumbling construction vehicles, and of the noise, dust, and stones scattered off the easement." R. 214, PID 4099. That year he also had a surveyor stake the easement boundaries.

Moore moved away in 2000 but has visited every summer since, usually for about two weeks. In 2001, he found all but one of the stakes removed and responded by placing tree stumps along the original easement boundaries. Thus began a multiyear cycle: Each summer from 2002 through 2017, Moore arrived to find his stumps removed and replaced them. Fed up, in 2018, Moore had the easement's recorded boundaries re-staked and added no-trespassing signs. But in July 2018, he found several posts removed.

At this point, Moore called the police and installed surveillance cameras. The next day, he found three of the stake holes filled and reported this to police. The day after, William, Michael, and Peter Bingham exchanged "loud and angry expletives" with Moore on the public road.

Moore sued the Binghams in 2019 for trespass and nuisance, seeking monetary damages, attorney fees and costs, and permanent injunctive relief. The Binghams counterclaimed, asserting a prescriptive easement over the 15-foot width as a defense and seeking attorney fees and

declaratory relief. Both parties moved for summary judgment. The district court granted the Binghams' motion and denied Moore's, concluding that the Binghams had a prescriptive easement and that this and the statute of limitations defeated Moore's claims. *Moore Family Trust*, 2022 WL 2619857, at *8-9. The court also found that Moore failed to show that the Binghams had overburdened the easement through use by more people over the years. *Id.* at *9.

## II.

We review de novo a district court's decision to grant or deny summary judgment. *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020). The moving party must establish that there is "no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), which requires showing that no "reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On this showing, the nonmoving party must use "specific facts" to demonstrate that "a genuine issue for trial" exists; otherwise, summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added). "In considering" a summary-judgment motion, "the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

## III.

We start with the grant of summary judgment to the Binghams' on their prescriptive-easement claim. The district court found that the Binghams established the elements for a

prescriptive easement, including continuous use; Moore argues that the court applied the wrong standard, improperly weighed the evidence, and failed to determine the easement's boundaries.[3]

**A.**

Moore is correct that the district court applied an incorrect standard for continuous use but is wrong about the right one. Under Michigan law, a prescriptive easement "arises from a use of the servient estate that is open, notorious, adverse, and continuous for a period of fifteen years." *Goodall v. Whitefish Hunting Club*, 528 N.W.2d 221, 223 (Mich. Ct. App. 1995). The party claiming the easement must establish these elements using "clear and cogent proof," *Marlette Auto Wash, LLC v. Van Dyke SC Properties, LLC*, 912 N.W.2d 161, 167 (2018), which is a higher standard "than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt," *Walters v. Snyder*, 570 N.W.2d 301, 303 (Mich. Ct. App. 1997). A landowner may interrupt the claimant's continuous use, and thus restart the fifteen-year clock, by blocking the claimant from using the land. *Fowle v. Dushane*, No. 339913, 2018 WL 5276145, at *4 (Mich. Ct. App. Oct. 16, 2018).

Moore asserts that he interrupted the Binghams' use with the tree stumps, but the Binghams argue that the stumps never stopped them. The district court found Moore's argument insufficient based on an example from the Third Restatement of Property:

> *A* drove his cattle across Blackacre every year to reach and return from summer pasture. *O*, the owner of Blackacre, repeatedly fenced Blackacre, blocking the trail, but *A* as frequently cut the wires and drove his cattle through. In the absence of

---

[3] Moore also argues that the prescriptive easement fails because the Binghams did not specify its start date and the district court looked only at the continuous 2001-2018 period. But the Binghams only needed to identify one 15-year period of prescriptive use, so their use at other times does not matter if this period was sufficient. *Marlette Auto Wash, LLC v. Van Dyke SC Properties, LLC*, 912 N.W.2d 161, 167 (2018).

other facts or circumstances, the conclusion would be justified that *O* did not interrupt *A*'s adverse use.

Restatement (Third) of Property: Servitudes § 2.17, cmt. j (2000). The district court reasoned that Moore did no more with the tree stumps than *O* did with the fencing, and that the Binghams simply moved the tree stumps as *A* cut the wires, and thus Moore failed to prove interruption. *Moore Family Trust*, 2022 WL 2519857, at *5-6.

We are not convinced that Michigan courts follow this narrow view of interruption. Although Michigan courts have cited the Third Restatement, we find only three examples citing the section on servitudes, none addressing interruption.[4] Faced with "little helpful authority" on interruption, the Michigan Court of Appeals turned to secondary sources but not the Third Restatement. *Fowle*, 2018 WL 5276145, at *4.[5] And although it noted that "[a] temporary or accidental interruption, generally, is not sufficient," *id.* (quoting 28A CJS, Easements, § 38, p. 237), it specifically stated that "a physical barrier erected across the easement, which prevents the dominant estate from continuing its use, interrupts the prescriptive period," *id.* (citing *Hopkins v. Parker*, 296 N.W. 294, 295-96 (Mich. 1941)), and "that if the owner of the servient estate 'takes any action that stops a claimant's use of the property' during the prescriptive period, such as erecting physical barriers, '*for any period of time, no matter how brief*,' 'this action will defeat a

---

[4] We have searched for such cases using Westlaw, and the Binghams cite no authority showing that Michigan courts follow the Restatement's approach to interruption. *See Finch v. Kelly*, No. 337493, 2018 WL 2991075, at *3 (Mich. Ct. App. June 14, 2018); *Applebee Oil Co. v. Michigan Milk Producers Ass'n*, No. 327514, 2016 WL 5599645, at *4 (Mich. Ct. App. Sept. 29, 2016); *Brookfield E. Lansing, LLC v. 125 N. Hagadorn, LLC*, No. 325956, 2016 WL 3542359, at *5 (Mich. Ct. App. June 28, 2016).

[5] "Intermediate state appellate courts' decisions are . . . viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005).

claim for a prescriptive easement.'" *Id.* (quoting 157 Am. Jur. Proof of Facts 3d § 59) (emphasis added). Accordingly, even brief interruption is sufficient under Michigan law.[6]

Although the district court viewed interruption too narrowly, Moore is mistaken about the proper standard. He cites *Hurst v. Rysberg*, asserting that he only needed to "manifest [his] purpose to resume possession of the land." *See* No. 259564, 2006 WL 1042084 (Mich. Ct. App. Apr. 20, 2006) (per curiam). But *Hurst* concerned adverse possession, which, unlike a prescriptive easement, requires exclusive use by the claimant. *Matthews v. Dep't of Nat. Res.*, 792 N.W.2d 40, 49 (Mich. Ct. App. 2010) (per curiam).

**B.**

Next, we agree with Moore that the district court failed to hold the Binghams to the correct standard of proof when evaluating whether the tree stumps restricted their use of the road. Because the Binghams moved for summary judgment on their claim of a prescriptive easement, they must show the absence of a genuine issue of material fact, Fed. R. Civ. P. 56(a), while also establishing the elements using "clear and cogent" proof, *Snyder*, 570 N.W.2d at 303; *see also McQueen v. Black*, 425 N.W.2d 203, 205 n.2 (Mich. Ct. App. 1988) (addressing clear-and-cogent standard in adverse-possession case and explaining that, "where there is any reasonable dispute, in light of the evidence over the questions of possession, the party has failed to meet his burden of proof").

---

[6] We also observe that, using language similar to *Fowle*, several other state courts have explicitly taken a broader view of interruption and found interruption even where the easement claimant immediately moved barriers. *See Pittman v. Lowther*, 610 S.E.2d 479, 480-81 (S.C. 2005) ("Numerous courts have held when the potential servient owner, by either threats or physical barriers, succeeds in causing a discontinuance of the use, *no matter how brief*, the running of the prescriptive period is stopped" (emphasis added)); *Allen v. Thomas*, 209 S.W.3d 475, 480 (Ky. Ct. App. 2006); *Kelley v. Westover*, S.W.2d 235, 235-36 (Ark. 1997); *Garrett v. Mueller*, 927 P.2d 612 (Or. 1996). These courts have reasoned that requiring more "would encourage wrongful or potentially violent behavior that is contrary to sound public policy." *Allen*, 209 S.W.3d at 480 (quoting *Pittman*, 610 S.E.2d at 481).

The Binghams asserted in their summary-judgment motion that, although Moore "argue[d] that he used stumps to impede [their] use," Moore "admits it never stopped them because the logs were moved." R. 217-1, PID 4582. They also asserted that "[c]ontinuity was not broken until 2018 when Mr. Moore placed metal signs along both sides of the original easement" and "[e]ven then, the signs only partially interfered with their use because larger vehicles [could] no longer get through." *Id.* At a motion hearing, the Binghams' attorney argued that "the undisputed evidence is that [the Binghams] didn't even know [the logs] were intended to stop them because [they were] so far off to the side that they noticed the pile but it didn't stop them." R. 243, PID 5030.

In response, Moore asserted that he interrupted the Binghams' use with the stakes in 1995 and 2018 and with tree stumps in summers 2001 through 2017, "all of which impeded the flow of [the Bingham's] traffic." R. 220, PID 4695. He pointed to his response to the Binghams' interrogatories and his October 2021 declaration, which described alleged interruptions in similar terms. As stated in the declaration, after finding the 1995 stakes removed in 2001, Moore "protested" using "tree stumps [that] obstructed the path of vehicles" placed "along the [n]orth and [s]outh side of the [w]est end of the [e]asement boundaries," where the easement meets the public road. R. 214, PID 4100. "[T]he next summer," he found the stumps "removed and disappeared," so Moore "again placed tree stumps to mark the easement," and "[e]ach subsequent summer the pattern of placement of stumps and the discovery of their removal[] continued until . . . 2018," when he had the boundaries re-staked. *Id.*

As explained, relying on the Restatement example, the district court found that Moore failed to establish a "factual dispute for trial" regarding interruption. *Moore Family Trust*, 2022 WL 2619857, at *6. The court noted that Moore "offer[ed] no evidence that the stumps remained

in place any longer than the time it took to place them there" and that the Binghams said "that the stumps 'never stopped them.'" *Id.* (quoting R. 217-1, PID 4581). "[T]he factual record of people with personal knowledge consists exclusively of sworn declarations of the Binghams who were actually using their property and the easement," the court reasoned, and "[a]gainst this sworn personal knowledge is only the speculation and hypothetical possibilities suggested by Mr. Moore who was not there." *Id.* at n.6.

On review, we conclude that the district court failed to hold the Binghams to their standard of proof. The Binghams's summary-judgment motion asserted that the stumps "never stopped them," citing a portion of Moore's first complaint in which Moore described finding the stumps removed each summer upon returning to the lake.[7] They otherwise provided no support for this assertion, except for an affidavit cited elsewhere in the motion, in which Michael William Bingham said that his family has "regularly walked, biked, and dr[iven] over the entire 15-foot-wide easement" and "continuously used the easement without interruption until 2018." R. 217-2, PID 4592.

This was not enough for the Binghams to establish the absence of a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), under the "clear and cogent" evidence standard, *Snyder*, 570 N.W.2d at 303. True, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Celotex Corp.*, 477 U.S. at 323. But this standard was not met with "all reasonable

---

[7] The Binghams cited Moore's first complaint, but the cited portion appears the same in Moore's Third Amended Complaint.

inferences" drawn in Moore's favor. *See Wexler*, 317 F.3d at 570. The Binghams never directly addressed the stumps, except to suggest that Moore "admit[ted]" that the stumps "never stopped them" because he said he found them removed. R. 217-1, PID 4581. Based on that "admi[ssion]" and Moore's declaration, and in the absence of any evidence from the Binghams about how and when they removed the stumps, a "reasonable inference" in Moore's favor would be that the stumps still blocked the Binghams from using the 15-foot width for at least some time before the Binghams moved them, which is enough for interruption. Thus, the court erred in granting summary judgment on the claimed prescriptive easement.[8]

## C.

Moore further argues that, even if the elements for a prescriptive easement were met, the court should have determined the easement's precise boundaries. Under Michigan law, adverse possession and prescriptive easements may rely simply on visible markers. *See Gould v. Fiero*, 247 N.W. 719, 719 (Mich. 1933) ("The line was marked by stakes, a post, and by trees."). Thus, the district court sufficiently found that the Binghams established "the existence of a prescriptive easement [15]-feet wide in length, over the gravel road between the Binghams parcels and the public road." *Moore Family Trust*, 2022 WL 2619857, at \*6; *cf. Matthews*, 792 N.W.2d at 43

---

[8] Relatedly, we note that Moore argues that the district court misconstrued evidence about a maple tree that, he asserts, once marked the deeded easement's boundaries. In 2008, the Binghams cut this tree down and paid Moore's family after they complained. The district court found this evidence irrelevant because the tree "clearly was not part of the prescriptive use before 2008" and "the Binghams [are not] asserting a prescriptive easement over the area where the maple once stood." *Moore Family Trust*, 2022 WL 2619857, at \*7. But as Moore notes on appeal, the court based its latter finding on evidence regarding a separate area of land, and the Binghams' only response is to agree that the tree could not have been part of the easement pre-2008 and assert that there is no evidence anyone knew the tree was easement-defining. Even if that assertion is true, if Moore shows that the Binghams changed their area of use in 2008, that would likely restart the 15-year clock at least for some area and potentially cast doubt on use of a greater area. Accordingly, the maple tree presents issues for trial as related to continuous use.

(finding claimant had easement over "pathway of pallets that stretches 0.22 miles (or 1,200 feet), from the end of the two-track road to the landlocked parcel").

Nonetheless, Moore asserts that the Binghams trespassed beyond the 15-foot width, and, indeed in defending against Moore's claims, the Binghams assert on appeal and asserted before the district court that they used a wider area at the easement's entrance. However, the Binghams do not challenge the district court's findings regarding the easement's boundaries, nor did their counterclaim seek declaratory relief for land beyond the 15-foot width, and as discussed below, Moore forfeited any argument about trespass beyond that area.

**IV.**

We turn to the district court's decision to deny summary judgment on Moore's trespass and nuisance claims and grant summary judgment to the Binghams. Moore argues that if the prescriptive easement fails, he is entitled to summary judgment based on the Binghams' trespass in the 3-foot expansion area. Additionally, Moore argues that, regardless of the easement, he should receive damages for alleged trespass beyond the expansion and also that the Binghams overburdened the easement and created several nuisance conditions.[9]

Under Michigan law, "[a] trespass is an unauthorized invasion of the private property of another," *Morse v. Colitti*, 896 N.W.2d 15, 30 (Mich. Ct. App. 2016), and "[a] private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land," *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 (Mich. 1992). "Activities . . . beyond the reasonable

---

[9] He also argues that the district court failed to join his trespass and nuisance claims, citing *L.A. Plaza, Inc. v. Hermiz*, in which the Michigan Court of Appeals noted that a trial court has jurisdiction to consider nuisance and trespass claims brought under a Michigan citizen-suit statute. *See* No. 293291, 2010 WL 4103536, at *3 (Mich. Ct. App. Oct. 19, 2010). *L.A. Plaza* is irrelevant here, and thus we thus find no error, especially given that the court considered these claims. For our review, we consider Moore's claims "as sounding in trespass and/or nuisance." *See Droncheff v. Kerr*, No. 298874, 2011 WL 6268200, at *1 (Mich. Ct. App. Dec. 15, 2011).

exercise of the use granted by [an] easement may constitute a trespass," *Schadewald v. Brule*, 570 N.W.2d 788, 796 (Mich. 1997), meaning "[t]he owner of an easement cannot materially increase the burden of the easement or impose a new and additional burden on the servient estate," *Heydon v. MediaOne*, 739 N.W.2d 373, 379 (Mich. 2007).

Trespass and nuisance claims are subject to a 3-year statute of limitations, Mich. Comp. Laws § 600.5805(2), but where "the nuisance or trespass is 'temporary' or 'continuous,' a new cause of action arises day by day or injury by injury, with the result that the plaintiff in such a case can always recover for such damages as have accrued within the statutory period immediately prior to the suit," *Township of Fraser v. Haney*, 983 N.W.2d 309, 312 n.13 (Mich. 2022) (quoting *Russo Farms, Inc. v. Vineland Bd. of Ed.*, 675 A.2d 1077, 1086 (N.J. 1996)).

**A.**

Assuming the prescriptive easement fails, Moore argued in his summary-judgment briefing that he must prevail for trespass in the 3-foot expansion area because the Binghams admit trespassing there. Indeed, in their summary-judgment briefing, the Binghams "admit[ted] to trespass by expanding the width and location of the easement" but argued that, even without a prescriptive easement, Moore's claims fail for a lack of timeliness and because "a responsible party or damage cannot be identified." R. 219-1, PID 4662-63. The Binghams noted Michigan's abrogation of the continuing-wrongs doctrine, asserting that "there need only be one wrong and one injury to begin the running of the period of limitations." R. 217-1, 4583 (quoting *Marilyn Froling Revocable Living Tr. v. Bloomfield Hills Country Club*, 769 N.W.2d 234, 247 (2009)).

The Binghams misconstrue the significance of Michigan's abrogation of the continuing-wrongs doctrine, which was a mechanism that enabled plaintiffs to sue for harms outside the statute

of limitations when part of a series of wrongs extended into the statutory period. *Haney*, 983 N.W.2d at 313. The doctrine's abrogation does not "immunize" trespass or nuisance defendants from suits based on "new violation[s]," *id.* at 314, which arise each day the trespass or condition persists, *id.* at 310, 312 n.13.

Accordingly, if the prescriptive easement fails, Moore has a viable theory of trespass. The Binghams admit trespassing in the 3-foot expansion area and suggest only that "*other* allegations of trespass fail" because "a responsible party or damage cannot be identified." R. 219-1, PID 4662 (emphasis added). By "other allegations," the Binghams apparently refer to the removal of the stumps and survey posts, filling the holes for the posts, William Bingham using a CAT Bobcat to dig along the easement, and Peter Bingham parking off the easement. As to removal of the stumps and filling the holes, we agree that Moore fails to identify a defendant. For the other trespass claims, Moore has identified defendants, and we leave any damages for resolution on remand.[10]

**B.**

Moore forfeited his claim for trespass beyond the 15-foot width. "[A] litigant must give the court and opposing parties notice of his position" and provide "'some minimal level of argumentation in support' of that position." *In re Anheuser-Busch Beer Labeling Mktg. & Sales Pracs. Litig.*, 644 F. App'x 515, 527 (6th Cir. 2016) (quoting *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009)). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to

---

[10] Moore attests that a security camera recorded Donna Bingham moving a sign in August 2018 ahead of a large construction truck.

. . . put flesh on its bones." *Id.* (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997)) (second alteration in original). Although Moore's complaint never limited trespass to the 15-foot width, and the facts section of his summary-judgment motion describes a larger area, Moore never discussed a larger area in the motion's argument section. Instead, he referred only to the Binghams' admission that they have expanded their road by 3 feet. Without a "minimal level of argumentation," this argument is forfeited. *Cf. id.*

## C.

Notwithstanding any prescriptive easement, Moore argues that he established seven theories of nuisance and trespass by overburdening: 1) the Binghams' creation of a 30-foot-wide road on their property abutting the easement; 2) the Binghams' transportation of mobile homes over the easement onto their property; 3) the Binghams' failure to attach private-road notices to 14 of 15 deeds, 4) the removal of the 1995 and 2018 survey markers, 5) the Binghams' use of the easement to travel between Bingham-owned properties, 6) the Binghams' use of the easement and the public road as an ATV/ORV trail, and 7) the Binghams' property splits in alleged circumvention of land-division laws. Moore asserts that these actions created "overburdening, dangerous, offensive, and hazardous condition[s]," R. 213, PID 3606, referencing *Buckeye Union Fire Ins. Co. v. State*, which instructs that "[n]uisance may . . . exist as a dangerous, offensive, or hazardous condition even with the best of care," 178 N.W.2d 476, 480 (Mich. 1970).

In response, the Binghams revisit their trespass arguments, asserting that Moore's nuisance and trespass-by-overburdening claims fail for untimeliness, "lack of damage," and "failure to identify a responsible party." Appellee's Br. 25. They also argue that Moore fails to identify any

- 14 -

cognizable nuisance injuries and make specific points, addressed below, regarding Moore's various theories.

The district court found that none of Moore's claims fell "within the statute of limitations but outside the scope of the prescriptive easement determination" and that "the Binghams' use of the easement remain[ed] within the original purpose." *Moore Family Trust*, 2022 WL 2619857, at *9. We agree that several claims fail without regard to whether the Binghams have a prescriptive easement, but we differ in our reasoning and conclude that Moore brought viable nuisance and overburdening claims based on speeding vehicles and use of ATVs/ORVs.

**1.**

Moore presents an issue of fact with his argument that the 30-foot-wide internal easement on the Binghams' property causes "a bottleneck by adjoining . . . the 12-foot-wide [e]asement [over Moore's property] followed by the 66-foot-wide [public road]." Appellant's Br. 48.[11] This argument supports a viable overburdening claim because, with "all reasonable inferences" drawn in Moore's favor, *Wexler*, 317 F.3d at 570, it supports Moore's theory that vehicles travel too quickly across his property, especially considered alongside Moore's images of vehicles driving fast over his property and his declaration about this problem. Additionally, as discussed below, this theory is buttressed by Moore's arguments about the private-road notices.

To be sure, the Binghams are permitted to use the easement for "access," but "unnecessary dallying, unnecessary noise, unnecessarily destructive maneuvering, and other such frivolities or aggravations beyond what intrinsically accompanies any particular conveyance will overburden

---

[11] The 30-foot-wide internal easement was created in 1995 when William E. and Greta Bingham split the land into 5 lots, adding the internal easement to the four deeds.

[an] easement." *Lamkin v. Hartmeier*, No. 326986, 2016 WL 4585816, at \*4-5 & n.8 (Mich. Ct. App. Sept. 1, 2016), *judgment vacated in part on other grounds*, 919 N.W.2d 273, 274 (2018). And the "touchstone" for overburdening is "reasonableness under the circumstances," which amounts to a "balancing test" best left to factfinders. *Id.* at \*5 (clarifying overburdening standard on appeal from summary disposition and noting that state court of appeals was "not in a position to evaluate whether defendants [had] overburdened the easement"). Thus, Moore has shown enough to create a reasonable dispute of fact about the nature and character of the vehicular use of the easement that is material to his overburdening claim.[12]

**2.**

Moore argues that the "Bingham parties['] two prohibited permanent mobile homes . . . trespassed in 2008 when surreptitiously transported in four (over 12-feet-wide) sections across the 12-foot-wide [e]asement . . . and created an overburdening, dangerous, offensive, and hazardous property condition." Appellant's Br. 49. He notes that the purchase agreement between Moore's grandparents and the Binghams prohibits permanent mobile homes on the Binghams property. And, although he concedes that this prohibition never made it into the deed, he asserts:

> Appellants argued under two exceptions to the Merger Doctrine, the lower court has equity power to enforce the prohibition of permanent mobile homes under the Purchase Agreement because the express intent of the parties was to include the language in the deed, and the failure to include the language is an unperformed part of the Purchase Agreement and was not merged into the 1980 Eister to Bingham Deed.

Appellant's Br. 49.

---

[12] The Binghams note in their summary-judgment briefing that Moore does not identify a specific Bingham party responsible for speeding. But Moore's complaint is also for injunctive relief, which the district court might find appropriate. Also, Moore's claims are based partly on the Binghams' liability for creating the conditions that have led to speeding.

In addressing Moore's claims, the district court found generally that none of Moore's claims "would be within the statute of limitations but outside the scope of the prescriptive easement determination." *Moore Family Trust*, 2022 WL 2619857, at \*10. We agree that the trespass claim is untimely because Moore sued 11 years after the mobile homes were transported over the easement. To the extent Moore implies that a nuisance condition was created due to the presence of the mobile homes in violation of the purchase agreement, and faults the district court for not granting the requested equitable relief, that claim fails as well. Although the district court spoke in terms of the statute of limitations, the parallel concept in equity is laches. And Moore gives no reason why the district court was obliged to reform a 1980 deed or grant equitable relief in 2019 for an alleged violation in 2008. Finally, to the extent Moore argues that the mobile homes created a continuing nuisance, he fails to argue any theory of ongoing harm, such as the homes being unsightly.

**3.**

The Binghams' failure to attach private-road notices to 14 of their 15 deeds, in violation of Michigan law, *see* MCL 560.261, supports Moore's overburdening theory. The Binghams admit to these failures but asserted in their summary-judgment briefing that "the buyers. . . underst[oo]d that the road was not serviced by the road commission, which is the purpose of the notice." R. 219-1, PID 4664. MCL 560.261 says that notice must be given "that the street or road is private *and* is not required to be maintained by the board of county road commissioners," so we are not convinced that the statute's purpose is limited to notice about maintenance. *See* MCL 560.261 (emphasis added). Moore provided evidence that the absence of these notices led some Bingham family members to believe the easement was "part of the public . . . [r]oad," R. 213, PID 3632.

- 17 -

This fact, considered together with Moore's argument about the 30-foot-wide internal easement, creates an additional dispute of fact about whether the Binghams have overburdened the easement with speeding and other uses.

**4.**

Next, Moore fails to show how the Binghams overburdened the easement or created a nuisance by removing the 1995 and 2018 survey markers. These actions involve "an unauthorized invasion of [Moore's] private property]," *Morse*, 896 N.W.2d at 30, thus constituting trespass, not nuisance, *Adkins*, 487 N.W.2d at 720, and they do not in themselves "materially increase the burden of the easement," as required for overburdening, *Heyden*, 739 N.W.2d at 379. Further, the 1995 claim is time-barred because Moore asserts that the Binghams moved the markers by 2001 at the latest, well before the three-year limitations period for Moore's 2019 lawsuit. *See* Mich. Comp. Laws § 600.5805(2).

**5.**

Likewise, Moore has no overburdening or nuisance claim regarding the Binghams' use of the easement to travel between Bingham-owned properties. True, an easement holder may not "use the easement for the benefit of an estate other than the dominant estate," such as by using the easement directly to access an adjacent parcel. *Johnson v. APJ Properties, LLC*, 729 F. App'x 401, 404 (6th Cir. 2018). But Moore admits that the Binghams traveled over the easement and then the public road to reach other Bingham-owned property, so their use was consistent with use for access as deeded. *Cf. id.* (holding dominant estate holder exceeded easement's scope after buying adjacent parcel and using easement for entry). Further, he does not suggest any non-burdening injury, negating any nuisance claim.

**6.**

Moore has viable claims for nuisance and trespass based on the Binghams' use of ATVs/ORVs. The Binghams admit in their summary-judgment briefing that "[i]t is undisputed that some of the Bingham parties and guests use ORVs on the [e]asement" but argue that their use is consistent with the deed's purpose for access. R. 219-1, PID 4665. However, the Michigan Court of Appeals has specifically recognized the potential for ATVs and similar vehicles to exceed the scope of an "access" easement and create a nuisance because they "can be considerably louder than motor vehicles, or at least generate a substantially different kind of noise, are typically used for recreation rather than truly for transportation, and may cause unique damage to an unpaved road surface." *Lamkin*, 2016 WL 4585816, at *5. The Binghams' admission and Moore's declaration about their use of these vehicles is enough to support nuisance and overburdening claims for trial.

**7.**

Lastly, Moore asserts that, over several years, the Binghams divided their property into 11 lots and that this occurred without government applications or approval under Michigan's land-division statute, which requires local approval for splits, MCL § 560.109, and imposes a limit on the number of divisions possible from a parent lot, *id.* § 560.108 (capping number of possible divisions derived from a parent parcel, defined in MCL § 560.102 as ones that existed in March 1997). The Binghams concede that they only obtained review when obtaining a variance for a tenth parcel, but they note that the town did not express any concerns about the prior splits at that point.

The district court did not specifically address this claim nor make findings regarding the Binghams' splits. We are unable to determine whether this claim was properly dismissed on this record and therefore remand for further consideration.

We note, however, that property splits on their own do not overburden an easement. Michigan's overburdening doctrine contemplates property splits—even ones that increase the number of easement users—as a routine matter. "If a dominant estate with easement rights is divided, all resulting parcels take a share in the easement as long as an unreasonable burden is not imposed on the servient estate," *Morse*, 896 N.W.2d at 23, and "[g]enerally, a mere increase in the number of persons using an unlimited right of way to which the land is subject is not an unlawful additional burden," *id.* (quoting *Henkle v. Goldenson*, 248 N.W. 574, 575 (Mich. 1933)). Thus, the remaining question is whether the Binghams exceeded the splits contemplated by Michigan law.

## V.

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

THAPAR, Circuit Judge, concurring. Although I agree with the majority on the bottom line, I am persuaded by much of the careful analysis in the opinion below. I write separately to emphasize two things the district court did right—and one oddity in Michigan law that compels my concurrence.

First, I would not fault the district court for relying on the Restatement (Third) of Property. *Contra* Maj. Op. III.A. There's no on-point precedent from the Michigan Supreme Court that resolves this case. So the district court had to make its best "*Erie* guess" as to what the Michigan Supreme Court would do. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013). As Michigan courts and the majority both admit, there is "little helpful authority" in Michigan law covering interruption of prescriptive easements, so the lower courts in Michigan have "resort[ed] to secondary sources for guidance." *Fowle v. Dushane*, No. 339913, 2018 WL 5276145, at *4 (Mich. Ct. App. Oct. 16, 2018) (per curiam). And Michigan courts have frequently invoked the Restatement, including the very section relevant here. *See, e.g.*, *Applebee Oil Co. v. Mich. Milk Producers Ass'n*, No. 327514, 2016 WL 5599645, at *4 (Mich. Ct. App. Sept. 29, 2016) (per curiam) (citing Restatement (Third) of Property (Servitudes) § 2.17 (2000)).

True, in the one case the majority highlights, a Michigan court relied on secondary sources other than the Restatement. *See Fowle*, 2018 WL 5276145, at *4. In that case, the court reasoned that a physical barrier suffices to interrupt the prescriptive period if it "stops a claimant's use of the property . . . for any period of time, no matter how brief." *See id.* (citing 157 Am. Jur. Proof of Facts 3d, § 59). But the district court applied that very rule, concluding that Moore's annual placement of tree stumps was "simply insufficient to stop the Bingham's prescriptive use, *even for a brief period.*" *Moore Fam. Tr. v. Bingham*, No. 19-CV-115 (RJJ), 2022 WL 2619857, at *5

(W.D. Mich. July 6, 2022) (emphasis added). In short, the district court thoroughly reviewed and applied all relevant law on this question, and I see no problem with turning to the Restatement for additional support—as Michigan courts often do.

Second, the district court correctly applied the *federal* summary-judgment standard. On the question of continuity, the evidence is one-sided. In 2001, Scott Moore began his annual ritual of placing tree stumps on the original easement boundaries. And every year after, he returned to find the previous year's stumps gone. What happened to the stumps in between his annual visits? Moore doesn't know because he wasn't there. But the Binghams were. And they say the tree stumps "never stopped them." R. 217-1, Pg. ID 4581. In fact, they "regularly walked, biked, and drove over the entire 15-foot-wide easement." R. 221-2, Pg. ID 4804. Moore speculates that the Binghams removed the stumps, but he presented no evidence to support this theory. As the district court rightly explained, on summary judgment, a judge can (and should) reject "speculation and hypothetical possibilities." *Moore Fam. Tr.*, 2022 WL 2619857, at *6 n.6; *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("[A] nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment.").

But this case has a unique wrinkle: the Binghams' entitlement to summary judgment depends on their prescriptive-easement claim. That means—as a *prerequisite* to summary judgment—Michigan law requires the Binghams to establish the elements of prescription with "clear and cogent proof." *Marlette Auto Wash, LLC v. Van Dyke SC Props., LLC*, 912 N.W.2d 161, 167 (Mich. 2018). That's a higher standard "than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt." *Walters v. Snyder*, 570 N.W.2d 301, 303 (Mich. Ct. App. 1997) (per curiam). In other words, "the evidence must clearly establish the

fact of possession and there must be little doubt left in the mind of the trier of fact as to the proper resolution of the issue." *McQueen v. Black*, 425 N.W.2d 203, 205 n.2 (Mich. Ct. App. 1988) (per curiam).

This places a heavy burden on the Binghams. Although the Binghams' evidence on continuity is undisputed (for purposes of the federal summary-judgment standard), I'm not sure it's "clear and cogent" (for purposes of the underlying, substantive state-law burden of proof). *Id.*; *see also O'Brien v. Willys Motors, Inc.*, 385 F.2d 163, 165 (6th Cir. 1967) (explaining that federal courts in diversity cases follow state law on burdens of proof). Here, the Binghams say the stumps "never stopped them." R. 217-1, Pg. ID 4581. Does that mean they encountered and quickly removed the stumps—or does it mean they never encountered the stumps at all? If we were applying the federal summary-judgment standard alone, the lack of a full explanation would be no problem. But under Michigan's "clear and cogent" standard, the Binghams' sworn statements leave room for doubt about whether their prescriptive use was truly uninterrupted.

The way this state-law burden of proof interacts with the federal summary-judgment standard is admittedly unusual. Indeed, when Michigan's "clear and cogent" standard applies, summary judgment may rarely be appropriate. Nonetheless, we're tasked with making our best guess at how Michigan law applies in federal court, and we've done so here. Thus, I agree with the majority that the Binghams haven't carried their burden and cannot prevail on summary judgment.